439 F.2d 63
 1 ITRD 1329
 J. C. PENNEY COMPANY, Inc., Plaintiff-Appellant,
v.
The UNITED STATES TREASURY DEPARTMENT, the Bureau of
Customs, David M.Kennedy, Secretary of the Treasury, Eugene
T. Rossides, Assistant Secretary ofthe Treasury, Matthew J.
Marks, Deputy to the Assistant Secretary of theTreasury, and
MylesAmbrose, Commissioner of Customs, individually and as
officers and/or employeesof the United States Treasury
Department, or Bureau of Customs, Defendants-Appellees.
 No. 625, Docket 35682.
 United States Court of Appeals, Second Circuit.
 Argued Jan. 6, 1971.
Decided March 1, 1971.
 
 Craig Mathews, Washington, D.C. (Albert W. Driver, Jr., Charles T. Stewart, Archibald E. King, New York City, Leva, Hawes, symington, Martin & Oppenheimer, Washington, D.C., of counsel), for plaintiff-appellant.
 Andrew P. Vance, Chief, Customs Section, U.S. Dept. of Justice, New York City (L. Patrick Gray, III, Asst. Atty. Gen., Civil Division, Dept. of Justice, Washington, D.C., Frederick L. Ikenson, Civil Division, Dept. of Justice, of counsel), for defendants-appellees.
 Samuel Frankel, New York City (American Importers Association, Inc.), on the brief for American Importers Association, Inc. as amicus curiae.
 Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered in the United States District Court for the Southern District of New York, Edward Weinfeld, Judge, dismissing plaintiff's complaint for lack of subject matter jurisdiction. Plaintiff (hereinafter 'Penney'), who is, inter alia, an importer of television sets from Japan, sought declaratory and injunctive relief preventing the Treasury Department from conducting an investigation under the Antidumping Act, 19 U.S.C. 160 et seq. into whether or not the imported television sets were being sold for 'less than fair value' (hereinafter LTFV).
 
 
 2
 On December 4, 1970, Penney noticed its appeal to this court from Judge Weinfeld's decision (handed down the previous day) and immediately applied for an injunction pending appeal (which was denied) and for an expedited appeal (which was granted). We find no error and affirm the judgment.
 
 
 3
 On the same day that Penney noticed its appeal Treasury issued its LTFV determination, noticed in the Federal Register of December 5 (35 Fed.Reg. 18549).
 
 
 4
 The Antidumping Act is designed to prevent actual or threatened harm to a domestic industry caused by the sale of merchandise in the United States at prices lower than in the country of origin. Cf. Note, 'The Antidumping Act: Problems of Administration and Proposals for Change,' 17 Stan.L.Rev. 730, 731 (1965). The procedure employed in making this determination, discussed thoroughly by the court below, is basically as follows: The Customs Bureau issues a 'Withholding of Appraisement Notice' when the Commissioner of Customs has reason to suspect that imported goods are being sold at prices lower than in the exporter's home market. Within three months the Secretary of the Treasury must render an LTFV decision if he concludes that 'a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than its fair value.' 19 U.S.C. 160(a). After the Treasury's decision, the Tariff Commission renders a decision as to whether or not there has been a real or threatened injury to a domestic industry. If it is found that such injury exists, the proceeding is returned to the Treasury Department for the publication of a dumping 'finding.' This step entails the imposition of a special dumping duty based on the pricing margins the Treasury has previously found. At this point the importer may file a protest with the Bureau of Customs and contest its denial in the Customs Court.
 
 
 5
 The determination of less than fair value is a complex one, since it must make adjustments for varying levels of trade and differing combinations of merchandise, services and conditions between sales in the United States and sales in the country of origin. 19 U.S.C. 161. It is Penney's contention that the Japanese television manufacturers provide numerous services for dealers and distributors that are borne by wholesalers and retailers in the United States. Therefore, the conditions of sale are different, justifying a higher price in the country of origin. On appeal, Penney is not directly challenging the substantive basis for the LTFV determination made by the Treasury Department. Rather it attacks what it considers the lack of due process in the methods employed by Treasury in making its LTFV determination. According to Penney, Treasury does not disclose either the facts upon which its determination is based or the criteria it applies in reaching its decision. It is alleged that Treasury regularly receives confidential information from parties having an interest in the outcome of the proceeding and that it relies on this information without disclosure to the parties adversely affected thereby.
 
 
 6
 We do not reach on this appeal the question of whether or not the procedures employed by the Treasury Department violate the Due Process Clause of the Fifth Amendment. The question for decision is, rather, whether this constitutional issue is to be determined initially by the District Court or the Customs Court. Since this case is claimed to arise under the 'Constitution, laws, or treaties of the United States,' Penney contends that jurisdiction derives from 28 U.S.C. 1331(a), general federal question jurisdiction. It is further claimed that more than $10,000 is in controversy, so no problem is presented in regard to the statutory minimum amount in controversy. We agree with the District Court, however, that Penney must seek its relief against the government in the Customs Court.
 
 
 7
 In 28 U.S.C. 1582(a), as amended by section 110 of the Customs Courts Act of 1970, Pub.L. No. 91-271, 84 Stat. 274 (June 2, 1970), Congress has provided that the Customs Court shall have 'exclusive jurisdiction' of all civil actions challenging an administrative decision, 'including the legality of all orders and findings entering into the same,' when that decision involves, inter alia, the appraised value of merchandise, the classification and rate and amount of duties chargeable, all charges or exactions within the jurisdiction of the Secretary of the Treasury, or the exclusion of merchandise from entry or delivery under any provision of the customs laws. Also relevant is 28 U.S.C. 1340, which provides:
 
 
 8
 The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue or revenue from imports or tonnage, except matters within the jurisdiction of the Customs Court.
 
 
 9
 Penney contends that neither provision bars its suit in the District Court, since its claim in no way concerns the substantive issues which require the expertise possessed by members of the Customs Court. It is therefore contended that the policy behind the grant of exclusive jurisdiction is absent in this case and that constitutional issues can and should be tried in the district courts. To be sure, the nature and extent of procedural due process that must be employed in an administrative proceeding is a question with which federal courts of general jurisdiction frequently deal. However, the procedural issues here arise directly from controversies over issues of substantive customs laws. Although it is conceivable that separate courts could deal with the separate procedural and substantive issues involved, such a result would significantly undermine Congress' 'complete system of corrective justice with respect to matters arising under the customs laws.' Cottman Co. v. Dailey, 94 F.2d 85, 88 (4 Cir. 1938).
 
 
 10
 In interpreting legislation such as that involved in this case, 'courts must * * * look to the logic of Congress and to the broad national policy which prompted the legislation.' Argosy Ltd. v. Hennigan, 404 F.2d 14, 20 (5 Cir. 1968). The precursor to the Customs Court, the Board of General Appraisers, was established by the Customs Administrative Act of 1890, ch. 407, 12-14, 26 Stat. 137. The court itself was created by the Act of May 28, 1926, ch. 411, 44 Stat. 669, and was given all the powers of the Board of General Appraisers. Metzger & Musrey, 'Judicial Review of Tariff Commission Actions and Proceedings,' 56 Cornell L.Rev. 285 (1971). See generally, Johnson, 'The United States Customs Court-- Its History, Jurisdiction, and Procedure,' 7 Oklahoma L.Rev. 393 (1954). Even in the early days of its existence, the Customs Court was recognized as having a broad jurisdiction to deal with matters related to questions of customs law. See Brown, 'The United States Customs Court,' at 15 (1933).
 
 
 11
 In 1948, Congress inserted into the United States Code two sections providing for the 'exclusive jurisdiction' of the Customs Court. 28 U.S.C. 1582, 1583. The legislative history of these enactments makes plain that the word 'exclusive' was inserted on the basis of and in agreement with the decisions in Patchogue-Plymouth Mills Corp. v. Durning, 101 F.2d 41 (2d Cir. 1939), and David L. Moss Co., Inc. v. United States, 103 F.2d 395 (Cust. & Pat.App. 1939), 'and cases cited therein.' See 28 U.S.C. 1582, 1583, Legislative History: Reviser's Note. These cases made clear their view that not only did the Customs Court have jurisdiction over customs matters, but that if that jurisdiction was to be exercised effectively in accordance with a complete, integral system of customs adjudication, it must be exclusive. In Moss, for example, the Court of Customs and Patent Appeals concluded that the Customs Court 'is the tribunal established by Congress in the provision of a complete system of corrective justice for the administration of the customs laws, and questions involving the validity of official action in the imposition and collection of duties are properly cognizable before it to the exclusion of other courts.' 103 F.2d at 397. This court in Patchogue expressed the view that the provisions of 28 U.S.C. 307-310, which provided for exclusive appellate jurisdiction in the Court of Customs Appeals over decisions of the Customs Court, manifested an intention on the part of Congress to have litigation regarding customs matters conducted exclusively in the customs courts. 101 F.2d at 43.
 
 
 12
 The courts in both Moss and Patchogue cited Cottman Co. v. Dailey, supra, which reached a similar conclusion. Significantly, another case 'cited therein' (in both decisions) was Riccomini v. United States, 69 F.2d 480 (9 Cir. 1934), which specifically held that the Customs Court possessed exclusive jurisdiction over a challenge to the constitutionality of the law under which the customs duties were exacted.
 
 
 13
 By giving official legislative status to the reasoning of these decisions, Congress expressed its agreement that proper administration of the customs laws requires a complete, integral, smoothfunctioning system of customs law justice. Such an end could not be accomplished if customs issues were fractionalized so that the district courts deal with certain questions such as constitutional issues arising out of customs controversies while the Customs Court concerns itself with the remaining customs issues.
 
 
 14
 Courts have long recognized that the Customs Court has authority to adjudicate issues of a constitutional nature. Riccomini v. United States, supra. In Horton v. Humphrey, 146 F.Supp. 819 (D.D.C.), aff'd, 352 U.S. 921, 77 S.Ct. 224, 1 L.Ed.2d 157 (1956), the court rejected plaintiff's argument that the Customs Court cannot review the constitutionality of a law under which the Treasury Department acted, and it was held that the remedy in the Customs Court was exclusive. In Eastern States Petroleum Corp. v. Rogers, 108 U.S.App.D.C. 63, 280 F.2d 611 (1960), appellant attacked the tax rate imposed upon petroleum imports, charging that the increase in the duty from one-fourth to one-half cent per gallon was an unconstitutional exercise of power. Judge Bazelon, speaking for the court, held that an adequate and exclusive remedy for the alleged unconstitutional action was available to appellant in the Customs Court.
 
 
 15
 Congress' intention to include the disposition of constitutional issues within its complete framework of customs adjudication was underscored by the recent enactment of section 108 of the Customs Courts Act of 1970, supra (28 U.S.C. 255), which provides:
 
 255. THREE-JUDGE TRIALS
 
 16
 (a) Upon application of any party to a civil action, or upon his own initiative, the chief judge of the Customs Court shall designate any three judges of the court to hear and determine any civil action which the chief judge finds: (1) raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order; or (2) has broad or significant implications in the administration or interpretation of the customs laws.
 
 
 17
 The general purpose of the Customs Courts Act of 1970 was to streamline procedures employed in the Customs Court in order to reduce the backlog of cases brought on by their exclusive jurisdiction in regard to customs matters. Three-judge panels were therefore largely eliminated. See 116 Cong.Rec. H 4460, 91st Cong., 2d Sess. (remarks of Mr. Celler; May 18, 1970). Congress made certain, however, by enacting 28 U.S.C. 255, that through three-judge courts for constitutional questions a broad representation of the court would review issues of a constitutional nature. 1970 U.S.Code Congressional & Administrative News, No. 6, at pp. 1868-69. See also, 116 Cong.Rec. H 4461, 91st Cong., 2d Sess. (remarks of Mr. Poff; May 18, 1970).
 
 
 18
 By enacting this provision, then, Congress has demonstrated its desire to have thorough and complete adjudication of constitutional questions in the customs court. Viewed in light of official Congressional adoption of the 'complete system' approach in the 1948 legislation, the enactment of this section compels the conclusion that Congress intended the Customs Court to have exclusive original jurisdiction of constitutional questions arising out of customs litigation. The pattern of adjudication established by Congress provides for appeal from the Customs Court to the Court of Customs and Patent Appeals, with recourse to the Supreme Court through petition for certiorari. Horton v. Humphrey, supra, 146 F.Supp. at 820. Such a system provides an adequate means of vindicating legal rights (cf. Kreutz v. Durning, 69 F.2d 802 (2d Cir. 1934)), and there exists no reason for this court to tamper with it.
 
 
 19
 Penney cites several decisions for the proposition that Customs Court jurisdiction is far from exclusive, but these cases have no applicability to the facts of the case at bar. In Croton Watch Co. v. Laughlin, 208 F.2d 93 (2d Cir. 1953), this court found that the District Court had jurisdiction of a suit challenging the action of the Collector of Customs excluding the entry of plaintiffs' goods under 15 U.S.C. 1124, which prohibited the importation of goods that copy or simulate the name or trademark of goods of an American manufacturer. Unlike the Antidumping Act, relevant in this case, that act was held to be not a part of the customs laws. Similarly in Precise Imports Corp. v. Kelly, 218 F.Supp. 494 (S.D.N.Y.1963) (Feinberg, J.), aff'd, 378 F.2d 1014 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967), it was held that jurisdiction existed in the District Court for a suit challenging the Collector's exclusion of imported knives on the ground that they were switchblades within the meaning of 15 U.S.C. 1241 and 1242. The suit was permitted because these provisions made no mention of the Collector of Customs and were held to be essentially parts of a criminal statute, not provisions of the customs laws. 218 F.Supp. at 495, 378 F.2d at 1015-1016.
 
 
 20
 Penney asserts several other arguments, none of which in our opinion has merit. It is contended that since no protest can yet be filed, the Customs Court lacks present jurisdiction over the controversy. See 19 U.S.C. 1514, as amended by section 207 and 208 of the Customs Courts Act of 1970, supra. We fully agree with the District Court, however, that 'the fact that the controversy may not be ripe for review by the Customs Court does not deprive that court of its exclusive jurisdiction and thereby vest this court with jurisdiction.'
 
 
 21
 It is further urged that even acknowledging that generally exclusive jurisdiction over constitutional issues is vested in the Customs Court, there nevertheless exists a recognized judicial exception to this statutory rule when no adequate relief may be obtained in that court. We do not dispute the existence of such an exception. See, e.g., Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892 (1918). The exception, however, is inapplicable to the case at bar. Penney argues that the exception is relevant in the present situation, since the Customs Court lacks equitable power to require the holding of a hearing. See, e.g., Cummins-Collins Distillers v. United States, 20 Cust.Ct. 93, 97, C.D. 1090, aff'd, 36 C.C.P.A. 88, C.A.D. 403 (1948). Thus the only remedy available to Penney is the obtaining of refunds of special dumping duties which may have been improperly assessed and paid. Though it may be true that the ordering of a hearing would be a more desirable form of relief from Penney's point of view than the obtaining of refunds, the mere fact that more desirable remedies are unavailable does not mean that existing remedies are inadequate. We conclude that there is, in fact, an adequate remedy available to Penney in the Customs Court. Cf. Eastern States Petroleum Corp. v. Rogers, supra, 280 F.2d at 614: 'The distinctions between the customs courts and the district courts do not rise to a level at which it may be said that final adjudication of constitutional questions in the customs courts offends the requirements of due process.'
 
 
 22
 It is strenuously argued that jurisdiction exists in the District Court on the basis of 28 U.S.C. 1651, the All Writs Act; 28 U.S.C. 2201-02, the Declaratory Judgment Act; and 28 U.S.C. 1361, an act providing for mandamus. These sections may not, however, be construed to provide subject matter jurisdiction in the District Court. 28 U.S.C. 1331(a), general federal question jurisdiction, has been found to be inapplicable for the sole reason that the Customs Court possesses exclusive jurisdiction under 28 U.S.C. 1582(a). If it were not for the exclusive jurisdiction provisions, section 1331(a) would be a perfectly adequate source of jurisdiction. Jurisdiction in the District Court is denied, not because of a defect in section 1331(a), but because the matter cannot be heard in the District Court, regardless of the asserted source of jurisdiction. The Complete system of customs adjudication, as provided for by Congress, would be equally undermined if the District Court were allowed to hear this case under one of the claimed alternative sources of jurisdiction as if it were to hear it under section 1331.
 
 
 23
 Finally, we agree with the court below that to permit this action in the District Court at this time would contravene 26 U.S.C. 7421, Internal Revenue Code of 1954, which prohibits a suit 'for the purpose of restraining the assessment or collection of any tax.' Penney attempts to answer this argument by stating that an order to the Secretary of the Treasury will not restrain the assessment or collection of any tax, since no duty has yet been levied. This proposed distinction between restraint of the authority who is to impose the tax and of the tax itself is illusory. Whether or not the duty has yet been levied, restraining the tax levier at an earlier stage in the proceedings cannot help but have the effect of ultimately delaying the collection of the tax. Where a complete system of review is provided there is no exceptional circumstance to take the case out of the general rule. Cottman Co. v. Dailey, supra.
 
 
 24
 The judgment of the District Court is affirmed.