SCM CORPORATION,
Plaintiff-Appellant,

v.

UNITED STATES INTERNATIONAL
TRADE COMMISSION et al.,
Defendants-Appellees,

Royal Typewriter Company and Brother
Industries, Ltd., Intervenors.

No. 75–1816.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 21, 1976.
Decided Jan. 12, 1977.

Frederick L. Ikenson, New York City, with whom Eugene L. Stewart, Washington, D. C., was on the brief for appellant.

Glenn E. Harris, Atty., Civ. Div., Dept. of Justice, New York City, of the bar of the Supreme Court of Virginia, pro hac vice by special leave of court with whom Rex E.

Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Washington, D. C., Andrew P. Vance, Chief Customs Section, New York City, and Eric B. Marcy, Asst. U. S. Atty., Washington, D. C., were on the brief for appellees.

H. William Tanaka and Lawrence R. Walders, Washington, D. C., filed a brief on behalf of Brother Industries Ltd. and Brother International Corp. as amici curiae urging affirmance.

John A. Kennedy, Jr., Washington, D. C., filed a brief on behalf of Royal Typewriter Co. as amicus curiae urging affirmance.

R. Christian Berg, Washington, D. C., entered an appearance for intervenor Royal Typewriter Co.

Before TAMM and LEVENTHAL, Circuit Judges, and FRANK A. KAUFMAN,* United States District Judge for the District of Maryland.

FRANK A. KAUFMAN, District Judge:

SCM Corporation (SCM), a domestic American manufacturer of portable electric and manual typewriters, appeals from the District Court's Order dismissing for lack of jurisdiction SCM's complaint in this case. Herein, SCM seeks to set aside a negative determination of injury made by the United States International Trade Commission (Commission)[1] and, to compel an affirmative injury determination by that Commission under the Antidumping Act of 1921. Appellees are the Commission; the six Commissioners of that body; the Secretary of the Treasury (the Secretary); the Assistant Secretary of the Treasury responsible for supervising the operation of the United States Customs Services; and the Commissioner of Customs.

## I

This case arises under the Antidumping Act of 1921, 19 U.S.C. §§ 160–73 (1970 and Supp. IV, 1974). Recently, in *The Timken Company v. Simon,* Judge McGowan wrote:

The Antidumping Act of 1921, 19 U.S.C. §§ 160–73 (1970 and Supp. IV, 1974), was enacted "to prevent actual or threatened injury to a domestic industry resulting from the sale in the United States market of merchandise at prices lower than in the home market (country of origin)." *J. C. Penney Co. v. Department of the Treasury,* 319 F.Supp. 1023, 1024 (S.D.N.Y.1970), aff'd, 439 F.2d 63 (2d Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). Upon receiving a complaint that foreign goods are being "dumped," the Secretary is required to determine whether that class of foreign merchandise is being sold or is likely to be sold in the United States or elsewhere at less than its fair value (LTFV)—the price on the home market. 19 U.S.C. § 160(a) (Supp. IV, 1974). If the Secretary makes an affirmative LTFV determination, he is required to advise the International Trade Commission (Commission), which in turn must notify the Secretary within three months whether an industry in the United States is being or is likely to be injured by reason of the LTFV sales.[2] *Id.* If the Commission reaches an affirmative determination, the Secretary must publish in the Federal Register both his own and the Commission's determinations, which together comprise a "dumping finding" for purposes of the Act. *Id.*

Once a dumping finding has been published, all imported unappraised [3] mer-

* Sitting by designation pursuant to 28 U.S.C. § 292(c).

1. Formerly the United States Tariff Commission. *See* 19 U.S.C. § 160 (1970).

[2.] The Commission could reach yet a third determination—namely, that a United States industry "is prevented from being established" by reason of the LTFV sales. 19 U.S.C. § 160(a) (Supp. IV, 1974). That category of injury to United States industry is not at issue in this case.

Appraisement means the ascertainment or determination of value of imported merchandise.

chandise described in that finding, and entered, or withdrawn from warehouse, for consumption not more than 120 days before the question was presented to the Secretary, is subject to a special anti-dumping duty in the approximate amount of the difference between the price of the imported merchandise sold in the United States and the price of comparable mer-chandise sold in the home market. *Id.* § 161(a) (1970).

To prevent importations during the pendency of the dumping complaint from being *appraised* by customs officials and thus escaping subsequent imposition of an antidumping duty, Congress enacted a provisional remedy known as withholding of appraisement. Whenever the Secre-tary has reason to believe or suspect that a class or kind of merchandise is being dumped, he is required to publish notice of that fact, called a withholding notice, in the Federal Register and to authorize the withholding of appraisement of such merchandise "until the further order of the Secretary, or until the Secretary has made public a [dumping] finding." *Id.* § 160(b) (Supp. IV, 1974). Merchandise covered by a withholding notice can be released by customs officials only if a bond is filed to assure payments of any antidumping duties subsequently as-sessed. *Id.* § 167 (1970); 19 C.F.R. §§ 153.50–.51 (1975). * * *

176 U.S.App.D.C. 219, at 221, 539 F.2d 221 at 223 (1976) (footnotes renumbered herein).

After a dumping finding is published, all entries of the merchandise in question are subject to antidumping duties. However, as Judge McGowan noted in *Timken* (176 at 222 n.3, 539 F.2d at 224 n.3):

To say that entries are *subject* to as-sessment of antidumping duties does not mean that antidumping duties *will be* assessed; after publication of a dumping finding, customs officials *will assess* anti-

dumping duties *only if* they determine that the market value (or constructed value) of the particular entries is higher than the purchase price or exporter's sales price. 19 U.S.C. § 161(a) (1970). [Emphases in original.]

SCM filed a complaint with the Secretary on February 14, 1974 alleging that portable electric typewriters from Japan were being sold at lower than fair value (LTFV). On March 20, 1974, a notice of the pendency of a dumping investigation was published in the Federal Register, 39 Fed.Reg. 10456. After the investigation, a notice was filed in the Federal Register on December 20, 1974 by Assistant Secretary of the Treasury MacDonald in which notice that official stated that there were reasonable grounds to believe that portable electric typewriters from Japan were being or were likely to be sold at LTFV and which directed custom officials to withhold appraisement of that merchandise, 39 Fed.Reg. 44054. The As-sistant Secretary published a notice on March 20, 1975 that sales of portable elec-tric typewriters were being or were likely to be made at LTFV, 40 Fed.Reg. 12685, and so advised the Commission. The Com-mission held a hearing on May 13 and 14, 1975 and rendered a negative determination of injury on June 19, 1975, by a vote of 3–2 with one Commissioner abstaining. That negative determination was published in the Federal Register on June 26, 1975, 40 Fed.Reg. 27079.[4] As a result of that nega-tive determination, the Secretary had no authority to publish a finding of dumping. The Secretary accordingly authorized the appraisement of the typewriters which ap-praisement had been withheld during the investigation.

SCM filed suit in the District Court seek-ing to have the Commissioner's negative determination of injury set aside and to obtain preliminary injunctive relief requir-ing the Secretary to withhold appraisement

---

**4.** The Commission concluded that "the domes-tic industry has prospered and is likely to con-tinue to grow and expand notwithstanding the fact that it does not produce certain types of low end portable electric typewriters." (*See* Appendix filed in this Court, p. 29). SCM con-tends that the Commission both misconstrued the governing statutory language and that the Commission's factual findings are not sup-ported by substantial evidence.

and liquidation[5] of the electric portable typewriters from Japan pending a determination of the merits of the action. The Secretary, at the District Court's request, consented to refrain from ordering appraisement of the merchandise pending determination upon the merits by the District Court. Appellees filed a motion to dismiss for lack of subject matter jurisdiction. The District Court, in a carefully worded opinion, granted appellees' motion to dismiss, holding that a remedy is available to SCM under section 516, 19 U.S.C. § 1516 (Supp. IV, 1974), and thus that exclusive jurisdiction rests in the Customs Court. The Court below also denied as moot SCM's motion for preliminary injunctive relief[6] and further denied as moot the motions for leave to intervene of two proposed intervenors, Brother Industries, Ltd. and Royal Typewriter Company.[7]

## II

28 U.S.C. § 1340 (1970) provides:
The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Customs Court.
28 U.S.C. § 1582(b) (1970) provides:
(b) The Customs Court shall have exclusive jurisdiction of civil actions brought by American manufacturers, producers, or wholesalers pursuant to section 516 of the Tariff Act of 1930, as amended.
If the Customs Court has jurisdiction over SCM's claim pursuant to section 516, then jurisdiction in the Customs Court is exclusive under 28 U.S.C. § 1582(b). However, that exclusive jurisdiction is limited to those claims which can be brought pursuant to section 516. Where no adequate remedy exists in the Customs Court for actions concerning customs matters, the federal district courts have jurisdiction. See, e. g., The Timken Co. v. Simon, supra; J. C. Penney Co. v. Department of Treasury, 439 F.2d 63, 68 (2d Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). It follows that it is necessary to examine section 516 to determine whether SCM's claim is one which can be brought under that statute.

Pursuant to section 516(a), an American manufacturer may file a petition with the Secretary either challenging the non-assessment of antidumping duties, if there has been no assessment, or challenging the amount of the special antidumping duties which have been assessed.[8] If the Secretary agrees with the manufacturer's assertion, he determines that duty should be assessed, if none has been assessed, and, if appropriate, determines the proper rate of duty to be assessed. The Secretary also informs the manufacturer of his determination. § 516(b). If the Secretary determines that the duty assessment was correct or that no antidumping duty should be assessed, he publishes that decision and so informs the manufacturer. The latter then has 30 days to give notice to the Secretary that the manufacturer desires to challenge the failure to assess antidumping duty or the rate of assessment if such a duty has been assessed. In that notice, the manufacturer must designate the ports of entry at which the manufacturer desires to challenge such non-assessment or determination of rate. The Secretary must then furnish the manufacturer with information concerning the merchandise at the designated

---

5. Liquidation means the final computation or ascertainment of customs duties on an entry. The process of liquidation is seemingly merged into, or is at any rate closely associated with, the process of appraisement. See 19 U.S.C. § 1500 (1970).

6. SCM's motion for an injunction pending appeal was denied by this Court on August 22, 1975.

7. Those two companies, respectively, are exporters and importers of other Japanese typewriters. After SCM noted its appeal herein, this Court granted leave to intervene to those companies.

8. Section 516 also deals with the imposition of countervailing duties which are duties assessed to offset bounties or grants by foreign governments to importers. No such duties are at issue in this case.

ports of entry so as to enable the manufacturer "to contest the appraised value or classification of, or rate of duty imposed upon or failure to assess .* * * antidumping duties upon, such merchandise in the liquidation of one such entry at such port." The customs officials at such port are directed to notify the manufacturer when the first of such entries is liquidated. § 516(c).

A different form of action is provided for challenges to the *Secretary's* negative LTFV determinations pursuant to section 516(d). After a determination by the Secretary that merchandise is not being sold or is not likely to be sold at LTFV, a manufacturer has 30 days to file a written notice to contest such determination with the Secretary, who must publish that notice. The manufacturer then has 30 days in which to file an action in the Customs Court contesting the Secretary's negative LTFV determination.

In the within case, SCM argues that the District Court erred in holding that jurisdiction over SCM's action is not present under 28 U.S.C. § 1340 since the action is neither one pursuant to section 516(c) challenging the non-assessment of antidumping duties nor one pursuant to section 516(d) challenging the *Secretary's* LTFV determination. Accordingly, contends SCM, jurisdiction is not present under 28 U.S.C. § 1582(b) or any other statute, and thus the except clause of 28 U.S.C. § 1340 does not come into play. SCM stresses that there is no provision in section 516 which enables an American manufacturer to contest a negative injury determination made by the *Commission.* Pointing to the 1974 Trade Act amendments to section 516 which, *inter alia,* added section 516(d) and provided for challenges to the *Secretary's* negative LTFV determinations, SCM asserts that the Congress has affirmatively indicated that challenges to the *Commission's* negative injury

determinations are not actionable in the Customs Court under section 516(c), or otherwise, and that thus no relief is available to SCM in the Customs Court. Appellees argue, however, that the Congress did not enact a specific statute providing for Customs Court review of a negative injury determination by the *Commission* only because the Congress believed that an adequate remedy was already available in the Customs Court pursuant to section 516(c). Thus, say appellees, the enactment in 1974 of section 516(d) providing a different procedure for review of the *Secretary's* negative LTFV determinations did not remove the then existing jurisdiction of the Customs Court under section 516(c) to review the *Commission's* negative LTFV determinations.

In support of their respective contentions both sides point to the legislative history of the 1974 Trade Act amendments to section 516. The House Committee on Ways and Means considered and rejected amending section 516 to provide explicitly for judicial review of "negative antidumping determinations". The Committee Report states:

> The Committee has been informed by letter from the Secretary of the Treasury that domestic producers do have the right of judicial review in antidumping cases. The committee wishes to make it clear that the absence of amendments to section 516 with respect to antidumping cases should not be considered to mean that negative antidumping findings are not subject to judicial review. The committee is in agreement with the letter.

H.R.Rep.No.93–571, 93d Cong., 1st Sess. 73 (1973). The letter referred to in the Committee Report advised against amending section 516 to make "negative antidumping determinations" reviewable in the Customs Court since the Treasury Department believed that such determinations were already reviewable.[9] The Senate Finance

---

**9.** The body of that letter, dated September 27, 1973 and addressed to the Acting Chairman of the House Ways and Means Committee, reads as follows:

> The Treasury Department has been asked to respond to a question raised in connection with your Committee's consideration of the Trade Reform Bill of 1973 concerning wheth-

Committee, however, took the view that section 516 should be amended specifically to provide judicial review of "negative antidumping determinations" in the Customs Court. The Report of that Committee states:

*Equal Judicial Review Rights for Domestic Producers.*—The House bill did not contain a provision permitting domestic manufacturers, producers or wholesalers the right to obtain judicial review of negative antidumping decisions in the U.S. Customs Court. The House report makes references to an informal opinion of the Treasury Department which asserts that existing law provides for judicial review of negative antidumping decisions on the

er negative determinations made under the Antidumping Act, 1921, are subject to judicial review.

A similar question was raised in connection with the hearings conducted by the United States Senate Finance Committee in 1968 concerning the consistency of the International Antidumping Code with the United States law. The Administration's response to that question, a copy of which is attached, concluded that there was no reason to doubt that the Customs Court would entertain a challenge to negative determinations under the Antidumping Act, even though no such challenge had ever been made in the Customs Court.

Events since 1968 have tended to confirm the Treasury Department's belief that there is no obstacle to review of negative antidumping determinations under the procedures set forth in section 516 of the Tariff Act of 1930 (19 U.S.C. 1516), as amended. In *Hammond Lead Products, Inc. v. United States* (61 Cust.Ct. 137, C.D. 3552 (1968)), the Customs Court cited with apparent approval the decision of the Court of Appeals in *North American Cement Corp. v. Anderson* ([109 U.S.App.D.C. 162] 284 F.2d 591 (D.C. Cir., 1960)) that the District Court had no jurisdiction to entertain challenges of negative antidumping determinations since the Congress had provided this remedy in the Customs Court through the vehicle of section 516. Although the decision of the Customs Court in the *Hammond Lead* case, that jurisdiction existed to review a negative countervailing duty determination by the Secretary of the Treasury, was reversed on appeal (58 C.C.P.A. 129, C.A.D. 1017 (1971)), nothing in the appellate court's decision fairly can be said to cast doubt upon the reviewability of negative antidumping determinations. The

part of the U.S. manufacturers, producers, or wholesalers. The Committee generally agrees with this opinion. However, it is the view of the Committee that since some question remains as to the ability of American manufacturers, producers, and wholesalers to obtain judicial review of negative antidumping determinations under section 516 of the Tariff Act of 1930, the law ought to be explicit on this point. The Committee believes it essential that domestic producers have the right to judicial review of negative price discrimination (LTFV) determinations, just as foreign producers and importers have the right to obtain judicial review of positive price discrimination (LTFV) determinations.

decision of the Court of Customs and Patent Appeals was predicated on a conclusion that countervailing duties were not ordinary customs duties but were penal in nature. Without examining the basis for the court's conclusion that countervailing duties are penal in nature, it can be stated that dumping duties clearly are not penal, but must be treated as ordinary duties (see section 211 of the Antidumping Act, 1921 (19 U.S.C. 170). [sic] Additionally, it must be noted that section 210 of the Act (19 U.S.C. 169) provides that ". . . the United States Customs Court, and the Court of Customs and Patent Appeals shall have the same jurisdiction, powers, and duties in connection with such protests [under the Antidumping Act] as in the case of appeals and protests relating to customs duties under existing law." While this language is directed at protests against the assessment of dumping duties, it logically can be considered to be directed at protests against negative antidumping determinations as well, since domestic manufacturers have the clear right under section 516 to appeal decisions relating to classification and rate of duty made in the process of assessing regular customs duties.

Accordingly, court opinions since the Administration's 1968 response have tended to remove doubt that negative antidumping determinations are judicially reviewable. It must be repeated, of course, that there can be no certainty on this question in the absence of an attempt to have a negative determination reviewed in the Customs Court and a decision by that court. Nevertheless, it is the Treasury Department's belief that a further amendment to specifically provide for judicial review is unnecessary and would be likely to duplicate relief already available.

The Committee, therefore, added new subsection (g) of section 321, which would amend section 516 of the Tariff Act of 1930 (19 U.S.C. § 1516) and sections 2631 and 2632 of title 28, United States Code, to provide *explicitly* for judicial review of negative antidumping determinations made by the Secretary of the Treasury. Under the amendment, within 30 days after a negative fair value determination by the Secretary, any American manufacturer, producer, or wholesaler of merchandise of the same class or kind as that described in such determination may file with the Secretary a written notice of his desire to contest the decision. The Secretary would then publish notice of the desire to contest the determination and, within 30 days after such publication, the manufacturer, producer, or wholesaler may commence an action in the Customs Court for review of the Secretary's determination. The amendments made to title 28, United States Code would make specific provision for the hearing of such actions in the Customs Court. [Emphasis in original.]

S.Rep.No.93-1298, 93d Cong., 2d Sess. 178 (1974); U.S.Code Cong. & Admin. News 1974, p. 7314. In fact, the Congress did, in 1974, enact legislation, now embodied in section 516(d), as to negative determinations of the Secretary.

SCM argues that the "negative antidumping determinations" referred to in the House Committee Report, the Treasury Department letter and the Senate Report and the 1973 statutory amendatory language relate only to LTFV determinations by the *Secretary* and not to the *Commission's* negative determinations of injury. Appellees, on the other hand, submit that the words "negative antidumping determinations" refer to both the Secretary's LTFV determinations and the Commission's injury deter-

minations. Exactly what the phrase, "negative antidumping determinations" as used in those documents, does or does not encompass is far from clear. The Senate amendment was incorporated by the Congress as section 516(d), which, by its own words, refers solely to the Secretary. However, the fact that the Congress may not have been specifically concerned about providing judicial review of the Commission's negative injury determinations at the time of the 1974 amendments to section 516 does not mean that such review was not already available pursuant to section 516(c). Since the House Committee assumed, and the Senate Committee indicated its general agreement, that judicial review was already provided for the *Secretary's* LTFV determinations pursuant to section 516, despite the then lack of specific authorization or reference to the same in section 516, judicial review of the Commission's negative injury determinations may also have then been and still be available without specific authorization or reference thereto in section 516. In that connection, we note that this Court held in 1960, prior to the enactment in 1974 of section 516(d) providing for specific review of the Secretary's LTFV determinations, that there was no jurisdiction in the District Court to review the Secretary's LTFV determination since review was exclusive in the Customs Court. *North American Cement Corp. v. Anderson*, 109 U.S. App.D.C. 162, 284 F.2d 591 (1960).

SCM also argues that even if it could proceed to assert its claims under section 516(c), the procedure provided therein establishes an inadequate remedy in this case. A challenge under section 516(c) is only a challenge to the non-assessment of antidumping duties on one entry. Therefore, contends SCM, the record and the issue before the Customs Court in a challenge under 516(c) pertains to information with regard to that one entry only.[10] That pro-

---

10. Section 516(c) provides:

(c) If the Secretary decides that the appraised value or classification of the articles or the rate of duty with respect to which a petition was filed pursuant to subsection (a) is correct, or that countervailing duties or

antidumping duties should not be assessed, he shall so inform the petitioner. If dissatisfied with the decision of the Secretary, the petitioner may file with the Secretary, not later than thirty days after the date of the decision, notice that he desires to contest the

cedure is to be contrasted with an action under section 516(d) in which the record and the issue before the Customs Court do not pertain to any given entry but rather to a whole class or kind of merchandise.[11] SCM urges that since section 516(c) contem-

appraised value or classification of, or rate of duty assessed upon or the failure to assess countervailing duties or antidumping duties upon, the merchandise. Upon receipt of notice from the petitioner, the Secretary shall cause publication to be made of his decision as to the proper appraised value or classification or rate of duty or that countervailing duties or antidumping duties should not be assessed and of the petitioner's desire to contest, and shall thereafter furnish the petitioner with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at such ports of entry designated by the petitioner in his notice of desire to contest, as will enable the petitioner to contest the appraised value or classification of, or rate of duty imposed upon or failure to assess countervailing duties or antidumping duties upon, such merchandise in the liquidation of one such entry at such port. The Secretary shall direct the appropriate Customs officer at such ports to notify the petitioner by mail immediately when the first of such entries is liquidated.

When a challenge is brought pursuant to section 516(c), the procedure in the Customs Court pursuant to 28 U.S.C. § 2632(f) is as follows:

(f) Upon service of the summons on the Secretary of the Treasury or his designee in any action brought under subsection (a)(1) or (a)(2), the appropriate customs officer shall forthwith transmit the following items, if they exist, to the United States Customs Court as part of the official record of the civil action: (1) consumption or other entry; (2) commercial invoice; (3) special Customs invoice; (4) copy of protest; (5) copy of denial of protest in whole or in part; (6) importer's exhibits; (7) official samples; (8) any official laboratory reports; and (9) the summary sheet. If any of the aforesaid items do not exist in the particular case, an affirmative statement to that effect shall be transmitted as part of the official record.

11. Section 516(d) provides:

(d) Within 30 days after a determination *by the Secretary* —

(1) under section 201 of the Antidumping Act, 1921 (19 U.S.C. 160), that a class or kind of foreign merchandise is not being, nor likely to be, sold in the United States at less than its fair value, or

(2) under section 303 of this Act that a bounty, or grant is not being paid or bestowed,

an American manufacturer, producer, or wholesaler of merchandise of the same class or kind as that described in such determination may file with the Secretary a written notice of a desire to contest such determination. Upon receipt of such notice the Secretary shall cause publication to be made thereof and of such manufacturer's, producer's or wholesaler's desire to contest the determination. Within 30 days after such publication, such manufacturer, producer, or wholesaler may commence an action in the United States Customs Court contesting such determination. [Emphasis supplied.]

In its brief (at p. 9) filed in this Court, appellees characterize section 516(d) as "a *shortcut* method of judicial review whereby an American manufacturer, within 30 days of publication of notice of his desire to contest a negative LTFV determination or a negative countervailing duty determination by the Secretary, may institute suit in the Customs Court without filing a formal administrative protest." [Emphasis in original.]

When a challenge is brought pursuant to section 516(d), the procedure in the Customs Court pursuant to 28 U.S.C. § 2632(g) is as follows:

(g) Upon service of the summons on the Secretary of the Treasury or his designee in an action contesting the Secretary's determination under section 201 of the Antidumping Act, 1921, as amended, that a class or kind of foreign merchandise is not being, nor likely to be, sold in the United States at less than its fair value, the Secretary or his designee shall forthwith transmit to the United States Customs Court, as the official record of the civil action, a certified copy of the transcript of any hearing held by the Secretary in the particular antidumping proceeding pursuant to section 201(d)(1) of the Antidumping Act, 1921, as amended, and certified copies of all notices, determinations, or other matters which the Secretary has caused to be published in the Federal Register in connection with the particular antidumping proceeding. Upon service of the summons on the Secretary of the Treasury or his designee in an action contesting the Secretary's determination under section 303 of the Tariff Act of 1930 that a bounty or grant is not being paid or bestowed, the Secretary or his designee shall forthwith transmit to the United States Customs Court, as the official record of the civil action, a certified copy of the transcript of all hearings held by the Secretary in the proceeding which resulted in such determination and certified copies of all notices, determinations, or other matters which the Secretary has caused to be published in the Federal Register in connection with such proceeding.

plates a challenge to the non-assessment of antidumping duties on only one entry, there is no assurance that by following section 516(c), SCM can obtain review of the Commission's negative injury determination. If there is no margin of dumping on the one entry which is challenged (that is, if there is no difference between the foreign market value on the one hand and the purchaser's or exporter's sales price on the other hand), then the Customs Court may never reach the question of the Commission's negative injury determination. Appellees at oral argument indicated that it was unlikely that the absence of a margin of dumping would be raised by the Government as a defense before the Customs Court. However, even if it were raised, appellees maintain that SCM could then challenge the non-assessment of antidumping duties with respect to one or more other entries. In that way SCM could attempt to establish the presence of a margin of dumping in connection with each such entry, and if it should be able specifically so to establish that margin, then to ask the Customs Court to reach the issues raised by the Commission's negative injury determination.

In *Timken*, Judge McGowan (176 U.S. App.D.C. at 224, 539 F.2d at 226) wrote with reference to section 516 that it

is designed to enable American manufacturers to challenge substantive decisions by the Secretary with respect to the need for or the amount of antidumping duties. The section is structured to enable the petitioning manufacturers to challenge one entry per port, and to use that entry as a vehicle to obtain Customs Court review of the merits of the Secretary's determination. While the matter is pending before the Customs Court, duties are assessed according to the decision of the Secretary, *id.* § 1516(e), and the Customs Court decision has prospective effect only, *id.* § 1516(g).

SCM submits that by providing review procedures for the Secretary's LTFV determinations pursuant to section 516(d) different than those called for by section 516(c), Congress indicated that section 516(c)'s re-

view procedure would have been too burdensome to follow in negative injury challenge cases. However, the Congress nowhere expressly indicated that the procedure for review of the Secretary's determination in section 516(d) was enacted because the procedure for review under section 516(c) was inadequate.

SCM also points out that an entry must be liquidated before it can be the subject of a section 516(c) proceeding, and that therefore, even if the Customs Court were to determine in such proceeding that antidumping duties should have been assessed on that entry, that Court would be without power so to order since an entry is only *subject* or *susceptible* to the assessment of duties if it is unappraised and unliquidated at the time the dumping finding is published. Because no dumping finding would have been published at the time that entry was appraised and liquidated, so, the argument goes, it could never be subject to antidumping duties. The appellees, at oral argument, maintained that section 516(c) is an implied exception to the requirement in 19 U.S.C. § 161 that only merchandise unappraised at the time of the publication of the dumping finding can be assessed with antidumping duties. Since 516(g) authorizes the reliquidation of an entry in accordance with the Custom's Court decision, appellees argue that the entry before the Customs Court could thereby be subject to antidumping duties despite the fact that the entry was liquidated prior to the publication of a dumping finding.

However, even if the Customs Court has the power to order reliquidation of an entry before it in a case in which the entry had already been liquidated at the time a dumping finding was published, it is not at all clear that the Customs Court can order assessments of antidumping duties where no dumping finding has ever been published with respect to that merchandise. If the commission determines that there is no injury as a result of the LTFV sales, the Secretary cannot publish a dumping finding. Without a dumping finding, there is no basis for the assessment of dumping

duties. It may be, however, that the Customs Court if it should find that the Commission's determination of injury was erroneous could make an affirmative injury determination itself or it may be that it would be required to or in any event would prefer to refer the matter back to the Commission with an appropriate remand order.

■ There is little question but that SCM raises serious questions concerning its problems in bringing its within claim before the Customs Court under section 516(c). However, we are not persuaded at this time that the Customs Court lacks power to provide SCM with adequate relief. If the Customs Court reaches the Commission's negative determination of injury in the context of a challenge to the non-assessment of antidumping duties on one entry under 516(c) and if the Customs Court either enters an affirmative determination of injury or refers the matter back to the Commission if it finds the Commission's determination was in error with an order to correct that error, then a challenge by SCM pursuant to section 516(c) would seemingly provide it with appropriate relief. It is certainly true that if there were jurisdiction in the District Court to entertain SCM's claim now, SCM would receive a more expeditious decision on the merits of its claim than it will receive if it has to proceed pursuant to section 516(c). However, "the mere fact that more desirable remedies are unavailable does not mean that existing remedies are inadequate". *J. C. Penney Co., Inc. v. Department of Treasury*, 439 F.2d *supra* at 68.

The recent decision of this Court in *The Timken Company v. Simon, supra*, is in no way inconsistent with our decision in this case. In *Timken*, in granting relief to the manufacturer, the Court wrote that if Timken could obtain judicial review in the Customs Court pursuant to section 516, it "would not hesitate to reverse the District Court's assertion of jurisdiction in this case." (176 U.S.App.D.C. at 224, 539 F.2d at 226). In that case, the Secretary had ordered the appraisement of merchandise prior to the publication of a dumping finding, after the Secretary had determined that sales were being made or were likely to be made at LTFV and after the Commission had determined that the LTFV sales were likely to injure an industry in the United States. In *Timken* the Secretary was required to perform the ministerial duty of publishing a dumping finding and was enjoined from ordering appraisement. In granting that relief, Judge McGowan (176 at 225, 539 F.2d at 227) expressly observed that "this is not an action to challenge a substantive decision of the Secretary as to the amount of duty assessed or *the failure to impose a duty*" (emphasis added). Such "substantive" challenges must, as indicated in *Timken*, 176 at 225, 539 F.2d at 227, be filed in the Customs Court. In *Timken*, Judge McGowan characterized (176 at 225, 539 F.2d at 227) the type of relief sought as "in the nature of mandamus".

■ SCM has raised what are far from frivolous doubts concerning its ability to obtain review in the Customs Court pursuant to section 516(c). On the other hand, appellees have urged upon us what appear to be quite possible constructions of the applicable statutes and legislative history. Under these circumstances, we believe that the Customs Court itself should be given the opportunity to utilize its own expertise concerning the applicable statutes, and to determine whether or not it has jurisdiction to review the Commission's negative injury determination in a section 516(c) proceeding.

The judgment below in favor of appellees is therefore reversed and the within case is remanded to the District Court. That Court shall retain jurisdiction over this action until SCM has the opportunity to press its quests for relief in the Customs Court. If that Court should determine either that it has no jurisdiction or that it does not have the authority to grant to SCM adequate relief to correct the Commission's negative injury determination if it decides

that the latter conclusion is in error, the District Court shall then itself proceed to exercise jurisdiction under 28 U.S.C. § 1340 and to reach the merits of SCM's claims.

*So ordered.*