SYBRON CORPORATION, Plaintiff,

v.

Jimmy CARTER, President of the United States, Robert S. Strauss, Special Representative for Trade Negotiations, William Kelly, Chairman Trade Policy Staff Committee, Defendants.

No. Civ.–76–486.

United States District Court, W. D. New York.

Oct. 13, 1977.

Richard F. Campbell, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., for plaintiff.

Velta A. Melnbrencis, U. S. Dept. of Justice, Civ. Div., Customs Section, New York City, for defendants.

CURTIN, Chief Judge.

This action has been brought by the Sybron Corporation under 28 U.S.C. § 1361 to compel the defendants to perform certain duties specified under the Trade Act of 1974, 19 U.S.C. § 2101 *et seq*. Plaintiff contends that the defendants have granted duty-free treatment to certain glass products in violation of the prohibition set forth

in 19 U.S.C. § 2463(c)(1)(F) and have refused to correct such illegal conduct. This section prohibits the President from designating any article as eligible for Generalized System of Preferences (GSP) treatment if such articles are "import-sensitive semimanufactured and manufactured glass products." On November 24, 1975, however, former President Gerald R. Ford issued Executive Order No. 11888 by which microscope slides and microcover glasses were declared to be eligible for such treatment. 40 Fed.Reg. 55276 (1975).

Erie Scientific Company, a division of the Sybron Corporation, is engaged in the manufacture of said microscope slides and microcover glasses. Plaintiff contends that such products come within the scope of the section and therefore have improperly been granted GSP treatment. As a result, plaintiff claims that duty-free imports in this area have had a severe adverse effect upon its ability to compete in the domestic market.

This action is currently before the court on the defendant's motion to dismiss and plaintiff's motion for summary judgment or, in the alternative, for a preliminary injunction. Before reaching the merits of this claim, the court must resolve a difficult question regarding its jurisdiction in this matter. Plaintiff asserts that this court has jurisdiction under the general federal question jurisdiction found in 28 U.S.C. § 1331 as well as under 28 U.S.C. §§ 1340 and 1361. The Government, on the other hand, contends that this matter falls within the exclusive jurisdiction of the United States Customs Court under 28 U.S.C. § 1582(a). The latter section reads in pertinent part:

> The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: . . . (2) the classification and rate and amount of duties chargeable; . . .

The Government argues for a liberal reading of the above section to cover all cases which involve customs classifications including the one before us. Plaintiff, on the other hand, reads the section literally to apply solely to "protests" brought under the terms of the Tariff Act of 1930, as amended.[1] It points out that in the Trade Act of 1974 the exclusive jurisdiction of the Customs Court was specifically extended in certain areas but not to GSP designations.[2] Plaintiff further points out that under the 1974 Act it is the President who is authorized to make GSP designations, not the Secretary of the Treasury nor any other Customs officer.[3] It argues, therefore, that in the absence of express congressional authorization, the Customs Court cannot take jurisdiction.

---

**1.** Two sections of the Tariff Act of 1930, as amended, grant specific authority for challenges to duty determinations. Section 514 (19 U.S.C. § 1514) provides the statutory basis for a protest against a customs officer by an importer while § 516 (19 U.S.C. § 1516) permits an American manufacturer, producer or wholesale to file a petition with the Secretary of the Treasury to challenge the classification or rate of duty placed upon imported merchandise of a class or kind which he manufactures, produces or sells wholesale. Appeal of the Secretary's final decision may be made to the Customs Court.

**2.** Section 331(b) of Public Law 93–618 amends 19 U.S.C. § 1516 to embrace protests on determinations on countervailing duties and antidumping duties. It is silent as to challenges on GSP determinations. (1974) U.S.Code Cong. & Admin.News 2290, 2377. *See also* Senate Report No. 93–1298 reprinted in (1974) U.S.Code Cong. & Admin.News 7186, 7320.

**3.** The system for review of GSP determinations does not follow the pattern for review of other import classification and duty determinations. The Special Representative for Trade Negotiations under 19 U.S.C. §§ 2461–2465 has provided for review of GSP determination by the trade Policy Staff Committee in 15 C.F.R. § 2007 *et seq.* An aggrieved party such as the plaintiff in this case must petition the Committee for relief. No provision has been made in the statute for judicial review.

Several cases on jurisdiction in the customs field have been discussed by the parties. These include *J. C. Penney v. U. S. Secretary of the Treasury*, 439 F.2d 63 (2d Cir. 1971); *Timken v. Simon*, 176 U.S.App. D.C. 219, 539 F.2d 221 (1976); and *SCM Corp. v. U. S. Int'l Trade Comm'n.*, 179 U.S.App.D.C. 110, 549 F.2d 812 (1977). While all three of these cases involve actions under the Anti-dumping Act of 1921, the parties have analogized them to the situation in this case.

In *J. C. Penney* the Second Circuit, after review of the legislative history of § 1582, affirmed the exclusive jurisdiction of the Customs Court in this area. It found that in the legislative history

> Congress expressed its agreement [with prior case law] that proper administration of the customs laws requires a complete, integral, smooth functioning system of customs law justice. Such an end cannot be accomplished if customs issues were fractionalized so that the district courts deal with certain questions such as constitutional issues arising out of customs controversies while the Customs Court concerns itself with remaining customs issues.

439 F.2d at 66.

The court also held that if jurisdiction was to be exercised effectively in accordance with a complete, integral system of customs adjudication, the Customs Court jurisdiction must be exclusive. *Id.* While the *Penney* rule does provide a general guide for jurisdiction over customs questions it is not universally applicable. In *Timken* the District of Columbia Circuit Court found that no adequate remedy existed in the Customs Court under § 516 (19 U.S.C. § 1516) when the Treasury Secretary had ordered a merchandise appraisement prior to publication of a dumping finding in violation of the Secretary's statutory duties. Since this was not a challenge to a substantive decision of the Secretary, but to a

ministerial act, jurisdiction was properly found in the district court under 28 U.S.C. § 1340. *See* 176 U.S.App.D.C. at 223–225, 539 F.2d at 225–227. Similarly in *SCM Corp.* the Circuit Court found serious questions regarding Customs Court jurisdiction over negative injury determinations but directed the case to the Customs Court to allow it to determine whether it might grant adequate relief while retaining jurisdiction in the district court pending that decision. *See* 179 U.S.App.D.C. at 119–120, 549 F.2d at 821–822.

Perhaps Congress, in adopting the 1974 Act, failed to give proper consideration to the problem of judicial review. There is substance to plaintiff's argument that a literal reading of 28 U.S.C. § 1582 does not provide the Customs Court with jurisdiction over a case such as this. However, I must conclude that since this question is so directly related to the national customs policy and directly involves the classification and rate of duty on the goods in question, the expertise found in the Customs Court should be applied to the issues at hand. Furthermore, some case authority exists for review of presidential acts regarding foreign trade in the Customs Court. *See Yoshida v. United States*, Cust.Ct., 526 F.2d 560 (1975); *Alcan Sales v. United States*, 534 F.2d 920 (Cust. & Pat.App.1976), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). Nevertheless, since the question remains whether the Customs Court can provide an adequate remedy, I will retain jurisdiction in this court pending a ruling by the Customs Court as to its jurisdiction.[4] This is to insure that the plaintiffs have recourse to a forum.

Plaintiffs are to file an action with the Customs Court immediately and to advise this court as to the progress there. If that court accepts jurisdiction, the action here will be dismissed.

So ordered.

---

4. In her argument before this court urging jurisdiction in the Customs Court, the attorney for the Government represented that the Department of Justice would not challenge jurisdiction if this action were filed in that court.