596 F.2d 51
 2 ITRD 1134
 FLINTKOTE COMPANY, GLENS FALLS DIVISION, Appellant,
v.
W. Michael BLUMENTHAL, Secretary of the Treasury, Robert E.
Chasen, Commissioner of Customs, W. Richard Nystrom,
District Director of Customs, Canada Cement Lafarge Limited,
Citadel Cement Corporation, Northeast Cement Division, Lake
Ontario Cement Limited, Rochester Portland Cement Corp., St.
Lawrence Cement Company, Independent Cement Corporation, and
Genstar Ltd., Appellees.
 No. 903, Docket 79-6037.
 United States Court of Appeals,
Second Circuit.
 Argued March 9, 1979.
Decided March 19, 1979.
 
 Andrew P. Vance, New York City (Barnes, Richardson & Colburn, New York City, James H. Lundquist, Michael A. Johnson and Thomas O'Neill, New York City, of counsel), for appellant.
 Velta A. Melnbrencis, Asst. Branch Director, New York City (Dept. of Justice, Civ. Div., Washington, D. C., Barbara Allen Babcock, Asst. Atty. Gen., David M. Cohen, Acting Branch Director, Washington, D. C., of counsel), for appellees Blumenthal, Chasen and Nystrom.
 Thomas A. Rothwell, Jr., Washington, D. C. (Pope, Ballard & Loos, Washington, D. C.), for appellees St. Lawrence Cement Company and Independent Cement Corporation.
 Shearman & Sterling, New York City (W. Foster Wollen, Donald L. Cuneo and David J. Mark, New York City, of counsel), for appellees Canada Cement Lafarge Limited and Northeast Cement Division of The Citadel Corporation.
 Arter & Hadden, Cleveland, Ohio (M. Neal Rains, Cleveland, Ohio, of counsel), for appellees Lake Ontario Cement Limited and Rochester Portland Cement Corp.
 Williams & King, Washington, D. C. (William K. Ince and Burton R. Thorman, Washington, D. C., of counsel), for appellee Genstar Ltd.
 Before FRIENDLY, SMITH and MANSFIELD, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 This expedited appeal from an order of the District Court for the Northern District of New York entered on February 16, 1979,[1] raises questions of the power and propriety of a district court's granting an American manufacturer relief ancillary to the primary relief sought by it in an action in the Customs Court under 19 U.S.C. § 1516 protesting the failure of the Secretary of the Treasury to impose antidumping duties under 19 U.S.C. § 160. Being in basic agreement with Judge Foley's well reasoned opinion which refused to grant such relief, we affirm his order dismissing the complaint.[2]
 
 
 2
 Plaintiff-appellant Flintkote Company (Flintkote) is an American manufacturer of portland hydraulic cement, used to form concrete, which is primarily consumed in highway and building construction. Such cement is imported from Canada duty-free. On or about August 2, 1977, Flintkote invoked the Antidumping Act, 19 U.S.C. § 160,[3] by a petition to the Commissioner of Customs alleging that imports of portland hydraulic cement (other than white nonstaining cement) from Canada were being or were likely to be sold in the United States at less than fair value (LTFV) causing injury to an industry within the United States. On September 8, 1977, pursuant to 19 U.S.C. § 160(c) (1), the Secretary of the Treasury (the Secretary) published an "Antidumping Proceeding Notice," 42 F.R. 45059, and began an investigation.
 
 
 3
 Some six months later, on March 17, 1978, the Secretary published a "Withholding of Appraisement Notice" pursuant to 19 U.S.C. § 160(b)(1)(B), 43 F.R. 11294-95. The Notice stated that the Secretary had tentatively determined that sales of imported portland hydraulic cement were being made at LTFV and directed the withholding of appraisement of such merchandise entered, or withdrawn from warehouses for consumption, effective immediately and to "cease . . . at the expiration of 6 months from the date of this publication (September 17, 1978), unless previously revoked." The effect of this notice was to make importers of portland hydraulic cement from Canada potentially liable for special dumping duties from the date of the notice and to impose the requirement of filing a bond to cover this potential liability in the event of an ultimate "dumping finding" to obtain the release of any such merchandise from the United States Customs Service. See 19 U.S.C. § 167; 19 C.F.R. § 153.50 (1978). Somewhat more than three months thereafter, see 19 U.S.C. § 160(b)(2), on June 28, 1978, the Secretary published a "Determination of Sales at Less Than Fair Value" wherein he made a final determination that sales of portland hydraulic cement from Canada were being made within the United States at LTFV and transferred the case to the International Trade Commission (ITC) pursuant to 19 U.S.C. § 160(a) to "determine within three months thereafter whether an industry in the United States is being or is likely to be injured . . ." by reason of such sales the second step essential for the imposition of an antidumping duty.
 
 
 4
 The success thus far enjoyed by Flintkote was halted on September 25, 1978, when the ITC published a determination, 43 F.R. 44907-10, by a three to one vote with two commissioners not participating, that sales of Canadian portland hydraulic cement at LTFV were not causing or likely to cause injury to an industry in this country. The Withholding of Appraisement notice having meanwhile expired by its terms, the Commissioner of Customs thereupon advised the appropriate customs officers that they could appraise and liquidate entries of portland hydraulic cement from Canada (including those whose appraisement and liquidation had been withheld pursuant to the notice of March 17, 1978) without regard to possible antidumping duties.
 
 
 5
 A month later Flintkote requested the Secretary to continue the withholding of appraisement and liquidation on the ground that the ITC's negative injury determination was in error a request which the Secretary denied on November 20, 1978. Meanwhile Flintkote had initiated the processes necessary for it to invoke the aid of the Customs Court in overruling the ITC's negative injury determination, by filing an American manufacturer's petition[4] under 19 U.S.C. § 1516(a) requesting the imposition of antidumping duties. As provided in 19 U.S.C. § 1516(c), the Secretary informed Flintkote that he would deny this request and Flintkote immediately filed a notice of contest. The determination of the petition and the notice of contest were published in the Federal Register on January 12, 1979, 44 F.R. 6550, 19 U.S.C. § 1516(c). Availing itself of information furnished by the Secretary as required by 19 U.S.C. § 1516(c), Flintkote, on February 14, 1979, began an action in the Customs Court seeking the imposition of an antidumping duty on a single duty-free entry of Canadian portland hydraulic cement at St. Albans, Vermont.
 
 
 6
 Meanwhile Flintkote had initiated this action against the Secretary, the Commissioner of Customs and a District Director of Customs (the federal defendants) in the District Court for the Northern District of New York. Flintkote sought to enjoin these defendants from proceeding with the appraisement and liquidation of entries of Canadian portland hydraulic cement made on and after March 17, 1978, and to cancel any liquidation of such entries made after September 28, 1978, until final resolution of Flintkote's suit in the Customs Court. Recognizing that the jurisdiction of the district courts "of any civil action arising under any Act of Congress providing for . . . revenue from imports," 28 U.S.C. § 1340, is subject to an exception for "matters within the jurisdiction of the Customs Court" and that the Customs Court has been given "exclusive jurisdiction of civil actions brought by American manufacturers, producers, or wholesalers pursuant to section 516 of the Tariff Act of 1930, as amended," 28 U.S.C. § 1582(b), Flintkote asserted that the district court nonetheless had jurisdiction because the Customs Court, by virtue of its alleged lack of injunctive power and the limitations of 19 U.S.C. § 1516(g) hereafter discussed, could not provide the complete relief sought by Flintkote. Flintkote moved for a preliminary injunction; the federal defendants cross-moved to dismiss the complaint on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Several Canadian exporters and United States importers of Canadian portland hydraulic cement were allowed to intervene as defendants. Two made separate motions to dismiss and the others joined in the federal defendants' motion. As previously stated, Judge Foley granted the motions to dismiss and denied the motion for a temporary injunction. However, he directed the federal defendants to continue to withhold appraisement and liquidation of entries of Canadian portland hydraulic cement, which they had done by agreement while the action was under advisement by him, so as to permit Flintkote to apply to us for a stay pending appeal, see note 1.
 
 
 7
 On the same day that the district court entered its decision, the Customs Court, in the action under § 1516(a) and (c) that had been instituted there, heard a motion by Flintkote which sought similar injunctive relief. In an opinion dated February 23, 1979, Judge Richardson denied the motion on two grounds, his belief that the Customs Court lacked power to grant injunctions, see Matsushita Electric Industrial Company, Ltd. v. United States Treasury Department, 67 Cust.Ct. 328 (1971), Aff'd 485 F.2d 1402 (C.C.P.A.), Cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), and his view that granting any such relief would run counter to 19 U.S.C. § 1516(g).
 
 
 8
 In J. C. Penney Co. v. United States Treasury Department, supra, 439 F.2d 63 (2 Cir.), we applied the general rule that disputes which concern the customs laws of the United States and arise under the Tariff Act of 1930 may be adjudicated only in the Customs Court pursuant to the grant of exclusive jurisdiction in 28 U.S.C. § 1582. We also noted, however, "a recognized judicial exception to this statutory rule when no adequate relief may be obtained in that court," Id. at 68. Flintkote relies on that language and on the upholding of district court jurisdiction by the District of Columbia Circuit in Timken Co. v. Simon, 176 U.S.App.D.C. 219, 539 F.2d 221 (1976) and by us in Sneaker Circus, Inc. v. Carter, 566 F.2d 396 (2d Cir., 1977). Its claim is that whereas under 28 U.S.C. § 1582(b) the Customs Court indeed has exclusive jurisdiction of actions brought by American manufacturers under the Tariff Act to review the Secretary's refusal to impose antidumping duties,[5] this action is within the jurisdiction of the district court as one under 28 U.S.C. § 1340 to enforce the Antidumping Act, 19 U.S.C. § 160, or under the general federal question statute, 28 U.S.C. § 1331, since admittedly it could not be brought in the Customs Court. We find it unnecessary to determine whether this action was within the "jurisdiction" of the district court[6] since we are convinced that granting the relief sought by Flintkote would run counter to the scheme enacted by Congress for handling claims of American manufacturers that the Secretary erred in not directing the assessment of antidumping duties.
 
 
 9
 It is clear beyond peradventure that so far as 19 U.S.C. § 1516 is concerned, relief to an American manufacturer claiming to be aggrieved by dumping is prospective only. Section 1516(e) says that notwithstanding the filing of an action in the Customs Court pursuant to 28 U.S.C. § 2632,[7] "merchandise of the character covered by the published decision of the Secretary (when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, not in harmony with the published decision of the Secretary) shall be appraised or classified, or both, and the entries liquidated, in accordance with the decision of the Secretary and, except as otherwise provided in this chapter, the final liquidations of these entries shall be conclusive upon all parties." Section 1516(g) ties the knot by providing that:
 
 
 10
 If the cause of action is sustained in whole or in part by a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, merchandise of the character covered by the published decision of the Secretary, which is entered for consumption or withdrawn from warehouse for consumption after the date of publication of the court decision, shall be subject to appraisement, classification, and assessment of duty in accordance with the final judicial decision in the action, and the liquidation of entries covering the merchandise so entered or withdrawn shall be suspended until final disposition is made of the action, whereupon the entries shall be liquidated, or if necessary, reliquidated in accordance with the final decision.
 
 
 11
 We see nothing to indicate that the Antidumping Act was intended to alter this plan. Although § 160(b)(1) requires the Secretary, once he determines that there is reason to believe or suspect the existence of LTFV sales, to publish a notice withholding appraisement, such withholding is to continue only "until the further order of the Secretary, or until the Secretary has made public a finding as provided for in subsection (a) of this section in regard to such merchandise," i. e., an injury finding by the ITC following his own LTFV finding and consequent reference to the Commission. Just as the Secretary must continue the withholding of appraisement once there is an affirmative finding from the ITC, as held in Timken Co. v. Simon, Supra, 176 U.S.App.D.C. 219, 539 F.2d 221, he may we need not decide whether he must terminate it by "further order" once it becomes certain that no administrative finding under § 160(a) will be made.[8] As Judge McGowan said in Timken, supra, 176 U.S.App.D.C. at 226, 539 F.2d at 228:
 
 
 12
 Based on the statutory language alone, we would conclude as does Timken, that the "until the further order of the Secretary" language was intended to cover Only those situations in which the Secretary is unable to publish a dumping finding, either because the Secretary had reached a negative LTFV determination (and therefore has not referred the complaint to the Commission), or because the Commission has concluded that the relevant United States industries are neither being nor are likely to be injured by the LTFV sales. If a dumping finding is not to be published, continued withholding of appraisement as a provisional remedy is unnecessary, and the Secretary therefore has authority to terminate the withholding notice under those circumstances. (Emphasis in original.)
 
 
 13
 Despite this language, Flintkote relies on Timken as strong authority in its favor. In that case the Secretary had published a withholding direction with respect to tapered Japanese roller bearings, and had made an affirmative determination of sales at LTFV. Subsequently, the ITC determined that an industry in the United States was likely to be injured by importation of the bearings. Instead of promptly publishing a finding "of his determination and the determination of the Commission," as required by § 160(a), which would have made unappraised entries subject to assessment of antidumping duties pursuant to § 161(a), the Secretary directed customs officials to appraise all the bearings that had been subject to the withholding notice, thereby vitiating the potential imposition of antidumping duties upon them.[9] Timken sued to enjoin execution of this direction and compel the Secretary to publish an antidumping finding forthwith. Affirming the district court's grant of an injunction, the Court of Appeals held that Timken's suit presented "a question outside the scope of section 516" since it was "not an action to challenge a substantive decision of the Secretary," 176 U.S.App.D.C. at 224, 225, 539 F.2d at 226, 227, but rather "an action to require the Secretary to perform statutory duties of a ministerial nature." Id. 176 U.S.App.D.C. at 224-225 n. 7, 539 F.2d at 226-27 n. 7.
 
 
 14
 Flintkote's reliance is on statements in the opinion that "The entries at issue in this case have already taken place, and nothing in section 516 can get them before the Customs Court," 176 U.S.App.D.C. at 224, 539 F.2d at 226, and that "the federal district courts can assert jurisdiction, under appropriate jurisdictional grants, over customs-related matters in which no adequate remedy exists in the Customs Court," Id. n. 7. This, however, ignores the point of Timken, namely, that the Secretary's failure to carry out the procedures mandated by § 160 in cases of an affirmative finding deprived the plaintiff, so far as concerned the withheld entries, of the victory it had achieved, and the court's clear recognition that "challenges to Substantive decisions of the Secretary must be filed in the Customs Court pursuant to that court's grant of exclusive jurisdiction over section 516 actions." Id. 176 U.S.App.D.C. at 225, 539 F.2d at 227 (emphasis supplied). It is of no moment that in the instant case the basis for the substantive decision was the no injury finding of the ITC rather than a negative LTFV finding by the Secretary.
 
 
 15
 Flintkote's position runs counter not only to the statutory language but to policy considerations which Congress evidently had in mind. As said by the district court, withholding of appraisement "is an impediment to trade and an interference with the smooth flow of international commerce" because of the uncertainty created for the seller or the importer. See generally Customs Administrative Act: Hearings on H.R. 8099 Before a Subcomm. of the Senate Finance Comm., 75th Cong., 3d Sess. 14-15 (1938). In recognition of this, Article 10(d) of the International Dumping Code, 19 UST 4348, 4357 (1967), directs that "The imposition of provisional measures shall be limited to as short a period as possible." Withholding of appraisement for a limited period required for administrative determination, after a preliminary finding by the Secretary of reason to believe or suspect sales at LTFV, is one thing; to prolong this during review by the Customs Court and the Court of Customs and Patent Appeals at the instance of any aggrieved manufacturer is another.[10] It is true that Public Law No. 90-634, § 201(a), 82 Stat. 1347 (1968), provides that the Secretary and what is now the ITC shall resolve any conflict between the Code and the Antidumping Act "in favor of the Act as applied by the agency administering the Act" and shall take the provisions of the Code into account "only insofar as they are consistent" with the Act "as applied by the agency administering the Act." See Timken Co. v. Simon, Supra, 176 U.S.App.D.C. 219, 226-27, 539 F.2d 221, 228-29. But here the Secretary advocates a position consistent with both the Act and the Code.
 
 
 16
 We have not overlooked Flintkote's argument that our reading of the statutes runs counter to some general statements by members of Congress that the intent of the 1974 amendments was to place American manufacturers seeking imposition of antidumping duties on an equal footing with importers who oppose them, See 1974 U.S.Code Cong. & Admin.News, pp. 7314-15; 120 Cong.Rec. 39754, 39756-57 (1974); 120 Cong.Rec. 41797 (1974); See also SCM Corp. v. United States, 450 F.Supp. 1178, 1190 (Cust.Ct.1978). We agree also that, as recognized in Judge Richardson's decision in the Customs Court, as a result of the deletion of former § 1516(a) by the Customs Court Act of 1970, P.L. 91-271, the American manufacturer is now in a worse position to challenge antidumping determinations than before passage of that Act despite the statement of the House Judiciary Committee that the revision was intended "to reflect the consolidation of appraisal and classification procedures within the Bureau of Customs, but is not designed to have substantive effect on the rights of the parties under existing law." U.S.Code Cong. & Admin.News, p. 3217 (1970). We do not assert that the relationship between §§ 160 and 1516 is in all respects clean and tidy. We hold only that Congress, endeavoring to strike a proper balance between the interests of American manufacturers, on the one hand, and foreign sellers and American importers, on the other, has sufficiently manifested its intention that once administrative proceedings under § 160 have culminated in a negative finding, as distinguished from the affirmative one in Timken, the American manufacturer can have only the prospective relief that § 1516 affords. We said in J. C. Penney Company v. United States Treasury Department, supra, 439 F.2d at 68, that district court jurisdiction over a matter cognizable in the Customs Court was not established merely because the district court could afford "more desirable remedies" to the plaintiff. This case is A fortiori since the "more desirable remedies" sought by Flintkote are remedies which Congress advertently withheld. If American manufacturers are to have the added remedies desired by Flintkote, it must be Congress that gives them.
 
 
 17
 The judgment of the district court is affirmed. The stay will be dissolved at the close of business on March 23, 1979.
 
 
 
 [1]
 The appeal came to our attention as a result of the appearance of plaintiff's motion for a stay on our motion calendar of March 6, 1979. Since the appeal seemed to raise a question deserving argument and failure to grant a stay would impair the effect of any relief to which plaintiff would be entitled in the event of reversal, we issued a stay and set the appeal for argument on March 9
 
 
 [2]
 Although the district court stated additional reasons for denying plaintiff's motion for a temporary injunction, we need not discuss this ruling since the complaint failed to state a claim on which any relief can be granted
 
 
 [3]
 The scheme of the Act is well described in J. C. Penney Co. v. United States Treasury Department, 439 F.2d 63 (2 Cir.), Cert. denied, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971), and Timken Co. v. Simon, 176 U.S.App.D.C. 219, 221-22, 539 F.2d 221, 223-24 (1976), and there is no need to repeat the description here. We likewise shall not pause to translate various technical terms used in the customs law, since these are well understood by those concerned with the subject
 
 
 [4]
 We shall use the phrase "an American manufacturer" although the rights conferred by 19 U.S.C. § 1516 also extend to American producers or wholesalers. Also 19 U.S.C. § 1516 is sometimes referred to as § 516 of the Tariff Act of 1930, as amended
 
 
 [5]
 Flintkote does not advance the argument, made by the manufacturer in SCM Corp. v. United States Int'l Trade Comm'n, 404 F.Supp. 124 (D.D.C.1975), rev'd and remanded, 179 U.S.App.D.C. 110, 549 F.2d 812 (1977). This was that when Congress added 19 U.S.C. § 1516(d) by the Tariff Act of 1974, 88 Stat. 2052, thereby creating a new form of action wherein an American manufacturer aggrieved by failure to assess antidumping duties can proceed before the Customs Court without having to comply with the procedures of 19 U.S.C. § 1516(a) and (c), it referred only to a determination by the Secretary under § 160(b) "that a class or kind of foreign merchandise is not being, nor likely to be, sold in the United States, at less than its fair value" but not to a no injury determination by the ITC under § 160(a). After the District of Columbia Court of Appeals had found there was uncertainty whether the Customs Court had jurisdiction where, as here, the manufacturer's grievance related solely to the ITC's no injury determination, Chief Judge Re held that the Customs Court possessed such jurisdiction under the general provisions of 19 U.S.C. § 1516(a) and (c). SCM Corp. v. United States, 450 F.Supp. 1178 (Cust.Ct.1978). Flintkote does not challenge that decision; indeed the pending action in the Customs Court proceeds on the assumption of its correctness
 
 
 [6]
 Mr. Justice Frankfurter once said "I do not use the term 'jurisdiction' because it is a verbal coat of too many colors." United States v. L. A. Tucker Lines, 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (dissenting opinion). See also Yonkers v. United States, 320 U.S. 685, 695, 64 S.Ct. 327, 333, 88 L.Ed. 400 (1944) (dissenting opinion), " 'Jurisdiction' competes with 'right' as one of the most deceptive of legal pitfalls."
 
 
 [7]
 The subsection here relevant is § 2632(a)(2), to wit, "a decision of the Secretary of the Treasury made under section 516 of the Tariff Act of 1930, as amended." Section 2632(a)(3) refers to an action contesting a negative LTFV finding by the Secretary under 19 U.S.C. § 160(b)
 
 
 [8]
 So far as we can determine, no "further order" was made here doubtless because the original Withholding of Appraisement Notice had expired by its own terms on September 17, 1978, six months from the date of its publication. Since the ITC no injury determination was made eight days later, at a time when no withholding notice was in effect, the Customs Bureau began appraisement and liquidation procedures. Flintkote does not claim to have suffered any injury from the absence of a formal order made subsequent to the ITC determination
 
 
 [9]
 The Secretary's reason for doing this was that the ITC had found only that an industry in the United States was "likely to be injured" rather than that it was being injured. Hence, in his view, there was no basis for assessing antidumping duties on goods that had entered before the ITC's determination. The court rejected this contention on the merits. 176 U.S.App.D.C. at 226-29, 539 F.2d at 228-31
 
 
 [10]
 It is no answer that the withholding of appraisement which Flintkote sought from the district court would occur only in cases that had survived the screening process of § 160(c) and had resulted in a preliminary finding of sales at LTFV under § 160(b)(1) and that, even then, the district court could refuse to issue an injunction in the absence of a showing of probable success. Determination of that issue would require the district court to enter the very area which Congress meant to entrust exclusively to the expertise of the Customs Court