## ALBERTA GAS CHEMICALS, INC.

v.

**W. Michael BLUMENTHAL, Secretary of the Treasury, Robert H. Mundheim, General Counsel of the Department of the Treasury, Robert E. Chasen, Commissioner of Customs, and The United States of America.**

C.D. 4792.
Court No. 78-8-01418.

United States Customs Court.

March 15, 1979.

Opinion Promulgated March 23, 1979.

As Amended April 2, 1979.

Freeman, Meade, Wasserman & Schneider, New York City (Bernard J. Babb, Washington, D. C., and Herbert Peter Larsen, New York City, of counsel), for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (Sheila N. Ziff, Trial Atty., New York City), for defendants.

*Opinion and Order on Plaintiff's Motion for Summary Judgment and Defendants' Cross-Motion for Dismissal*

NEWMAN, Judge:

Plaintiff, who *inter alia* is an importer of methyl alcohol (methanol or wood alcohol) from Canada, seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that the Secretary of the Treasury (Secretary) lacked authority to initiate an investigation under the Antidumping Act of 1921, as amended (19 U.S.C. §§ 160 *et seq.*) (Antidumping Act), and requiring that defendants should refrain from the prosecution of such investigation. Additionally, plaintiff requests "whatever ancillary relief may be necessary and proper pursuant to 28 U.S.C. § 2202".

Presently before the court are plaintiff's motion for summary judgment under rule 8.2 of the rules of this court, and defendants' cross-motion for dismissal under rule 4.7(b) on the ground that the court lacks jurisdiction of the subject matter of this action.

After careful consideration of both counsel's memoranda of law and affidavit of plaintiff's president, John J. LoPorto, filed in support of plaintiff's motion, I have concluded that defendants' motion for dismissal must be granted. Accordingly, I do not reach the issue of the validity of the Secretary's determination to initiate the antidumping investigation.

## I.

The material facts, which are not in dispute, may be briefly summarized:

On May 2, 1978, the Secretary received information "in proper form", in accordance with sections 153.26 and 153.27, Customs Regulations (19 CFR §§ 153.26, 153.27) from E.I. du Pont de Nemours & Company, alleging that methanol exported from Canada is being, or is likely to be, sold at less

than fair value within the meaning of the Antidumping Act. On the basis of this information and subsequent preliminary investigation by the Customs Service, an "Antidumping Proceeding Notice", dated June 8, 1978, was published in the Federal Register of June 14, 1978 (43 FR 25758). This notice stated, *inter alia,* that the Customs Service was instituting an investigation "to verify the information submitted and to obtain the facts necessary to enable the Secretary of the Treasury to reach a determination as to the fact or likelihood of sales at less than fair value".

By a letter (captioned "Protest/Notice of Intent to Contest 43 FR 25758, June 14, 1978") dated June 23, 1978, to the Secretary, the Commissioner of Customs and the General Counsel of the Treasury Department, plaintiff contested the initiation of the antidumping investigation. In essence, the predicate of plaintiff's "protest" was that the Secretary's determination on June 8, 1978 to initiate the investigation was made more than 30 days after receipt of information (on May 2, 1978), and consequently the determination and investigation are void and *ultra vires,* since they contravene the time limit prescribed by 19 U.S.C. § 160(c)(1).[1] In a reply letter dated July 7, 1978, the Treasury Department informed plaintiff that it was proceeding with the antidumping investigation notwithstanding that such investigation was initiated more than 30 days after the du Pont petition was filed, since assertedly the statutory time limit is directory rather than mandatory.

A "Withholding of Appraisement Notice" respecting methanol from Canada was published in the Federal Register of December 19, 1978 (43 FR 59196).

1. This provision reads:

(c)(1) The Secretary shall, within thirty days of the receipt of information alleging that a particular class or kind of merchandise is being or is likely to be sold in the United States or elsewhere at less than its fair value and that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise into the

## II.

The gravamen of plaintiff's action is that under 19 U.S.C. § 160(c)(1) the Secretary's authority to initiate the full scale investigation of the information submitted by du Pont on May 2, 1978 terminated by operation of law 30 days after receipt of such information, viz., on June 1, 1978. Consequently, according to plaintiff, the Secretary's determination on June 8, 1978 to institute an investigation and the publication of the "Antidumping Proceeding Notice" on June 14, 1978 are illegal and *ultra vires* acts, as are all subsequent proceedings in the matter.

## III.

Initially, we must consider the threshold jurisdictional issue presented. In support of their cross-motion to dismiss, defendants insist that the statutory prerequisites for invoking the court's jurisdiction under 28 U.S.C. § 1582 have not been complied with.

Preliminarily, it should be observed that there is no dispute in this case that under section 1582 the Customs Court has subject matter jurisdiction over actions arising under the Antidumping Act. "In such cases [the Customs Court] may review the actions of the Secretary of the Treasury and the Tariff Commission [now United States International Trade Commission] to determine whether the procedures prescribed by Congress have been followed and whether the Secretary, the Tariff Commission, or their delegates have proceeded within the statutory authority or whether their actions are *ultra vires* and void". *Matsushita Electric Industrial Company, Ltd. v. United States Treasury Department,* 67 Cust.Ct. 328, 331, C.D. 4992 (1971), *aff'd,* 485 F.2d 1402, 60 CCPA 85, C.A.D. 1086

United States, determine whether to initiate an investigation into the question of whether such merchandise in fact is being or is likely to be sold in the United States or elsewhere at less than its fair value. If his determination is affirmative he shall publish notice of the initiation of such an investigation in the Federal Register. If it is negative, the inquiry shall be closed.

(1973), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). However, to borrow phraseology from *Matsushita,* the present case "is outside the framework of the general statutory scheme for customs litigation and the question is whether this court has any authority to entertain it". 67 Cust.Ct. at 331.

Prior decisions have stressed "the precise and narrow jurisdictional limits within which this court operates". *Dexter v. United States,* 424 F.Supp. 1069, 1070, 78 Cust.Ct. 179, C.R.D. 77–1 (1977). *Accord, United States v. Boe,* 543 F.2d 151, 64 CCPA 11, C.A.D. 1177 (1976); *Matsushita, supra.* See also Judge Richardson's well reasoned decision in *Flintkote Company, Glens Falls Division v. United States (Independent Cement Co., Party-in-Interest),* 467 F.Supp. 626, 82 Cust.Ct. ——, C.R.D. 79–5 (1979). *Cf.* Judge Foley's recent memorandum-decision and order in *Flintkote Company, Glens Falls Division v. Blumenthal, Secretary of the Treasury,* 469 F.Supp. 115 (N.D.N.Y.1979), *aff'd,* 596 F.2d 51 (C.A.2 1979). Indeed, our Court of Appeals has noted that 28 U.S.C. § 1582 "both establishes and limits the jurisdiction of [the Customs] Court". *Boe,* 543 F.2d at 154, 64 CCPA at 15–16.

Section 1582 provides, so far as pertinent herein:

§ 1582. Jurisdiction of the Customs Court

(a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision, including the legality of all orders and findings entering into the same, involves: (1) the appraised value of merchandise; (2) the classification and rate and amount of duties chargeable; (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; (4) the exclusion of merchandise from entry or delivery under any provisions of the customs laws; (5) the liquidation or reliquidation of an entry, or a

modification thereof; (6) the refusal to pay a claim for drawback; or (7) the refusal to reliquidate an entry under section 520(c) of the Tariff Act of 1930, as amended.

(b) The Customs Court shall have exclusive jurisdiction of civil actions brought by American manufacturers, producers, or wholesalers pursuant to section 516 of the Tariff Act of 1930,. as amended.

(c) The Customs Court shall not have jurisdiction of an action unless (1) either a protest has been filed, as prescribed by section 514 of the Tariff Act of 1930, as amended, and denied in accordance with the provisions of section 515 of the Tariff Act of 1930, as amended, or if the action relates to a decision under section 516 of the Tariff Act of 1930, as amended, all remedies prescribed therein have been exhausted, and (2) except in the case of an action relating to a decision under section 516 of the Tariff Act of 1930, as amended, all liquidated duties, charges or exactions have been paid at the time the action is filed.

\*    \*    \*    \*    \*    \*

As may be seen above, section 1582(c) explicitly confines this court's jurisdiction to actions in which: (1) either a protest has been filed, as prescribed by section 514 of the Tariff Act of 1930, as amended (19 U.S.C. § 1514), and denied in accordance with section 515 of the Tariff Act of 1930, as amended (19 U.S.C. § 1515), or if the action relates to a decision under section 516 of the Tariff Act of 1930, as amended (19 U.S.C. § 1516), all remedies prescribed therein have been exhausted; and (2) all liquidated duties, charges or exactions have been paid at the time the action is filed, except in the case of an action relating to a decision under section 1516. The jurisdictional prerequisites under section 1582 are mandatory, "the statute having provided no room or opportunity for the exercise of discretion". *Boe,* 543 F.2d at 155, 64 CCPA at 16.

### IV.

Plaintiff posits that it has fulfilled "all applicable conditions" under sections 1514 and 1515 (reply brief at 9). Section 1514 lists seven categories of administrative decisions which may be protested (including the legality of all orders and findings entering into the same). Thus, section 1514, so far as pertinent, reads:

§ 1514. Protest against decision of appropriate customs officer—Finality of decisions; return of papers

(a) Except as provided in section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by American manufacturers, producers, and wholesalers), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery under any provision of the customs laws;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title, shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court in accordance with section 2632 of title 28 within the time prescribed by section 2631 of that title. When a judgment or order of the United States Customs Court has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the appropriate customs officer, who shall take action accordingly.

Form, number, and amendment of protest; filing of protest

(b)(1) A protest of a decision under subsection (a) of this section shall be filed in writing with the appropriate customs officer designated in regulations prescribed by the Secretary, setting forth distinctly and specifically each decision described in subsection (a) of this section as to which protest is made; each category of merchandise affected by each such decision as to which protest is made; and the nature of each objection and reasons therefor. * * *

\* \* \* \* \* \*

As previously mentioned, plaintiff claimed in its letter of June 23, 1978 that the Secretary's determination to initiate an antidumping investigation was untimely, and therefore the determination and investigation are void and *ultra vires*. In an apparent effort to bring its claim within one of the seven categories of administrative decisions enumerated in sections 1582(a) and 1514(a), plaintiff points to the language in subdivision (a)(3) in sections 1582 and 1514 "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury" (including the legality of all orders and findings entering into the same). Thus, plaintiff advances the argument that it is contesting an order or finding entering into a "charge or exaction" within the purview of section 1582(a)(3) and section 1514(a)(3). I find no merit in this contention.

The terms "charges" and "exactions" as used in subdivision (a)(3) of sections 1582 and 1514 were not intended to embrace an interlocutory determination by the Secretary to initiate an antidumping investigation. Rather, from a review of a long line of cases involving "charges" and "exactions", it is obvious that these terms have been applied to actual assessments of specific sums of money (other than ordinary

customs duties) on imported merchandise. See, e. g., *United States v. Davies Turner & Company*, 48 CCPA 159, C.A.D. 784 (1961); *Puget Sound Freight Lines v. United States*, 173 F.2d 578, 36 CCPA 70, C.A.D. 400 (1949); *Guy B. Barham Co. v. United States*, 35 CCPA 138, C.A.D. 385 (1948); *United States v. Frank F. Smith & Co.*, 25 CCPA 163, T.D. 49267 (1937); *United States v. Hawley & Letzerich*, 17 CCPA 110, T.D. 43452 (1929); *United States v. Frame & Co.*, 13 Ct.Cust.Appls. 603, T.D. 41457 (1926); *Atlantic Transport Co. v. United States*, 5 Ct.Cust.Appls. 373, T.D. 34872 (1914); *United States v. Masson*, 4 Ct.Cust.Appls. 363, T.D. 33534 (1913); *Arbuckle Bros. v. United States*, 3 Ct.Cust. Appls. 105, T.D. 32362 (1912); *J. M. Altieri v. United States*, 38 Cust.Ct. 498, Abs. 60742 (1957); *W. X. Huber v. United States*, 29 Cust.Ct. 92, C.D. 1451 (1952), *rev'd on other grounds, United States v. W. X. Huber*, 41 CCPA 69, C.A.D. 531 (1953); *L. A. Importing House v. United States*, 16 Cust.Ct. 1, C.D. 974 (1945), *decided on rehearing*, 19 Cust.Ct. 94, Abs. 51789 (1947). In the instant case, there has been no assessment of any "charge" or "exaction", nor any order or finding entering into a charge or exaction.

### V.

The thrust of defendants' motion to dismiss is premised on the argument that because of the particular statutory constraints on this court's jurisdiction, the instant action is premature and anticipatory. I agree.

Procedurally, the Antidumping Act requires, first, a determination by the Secretary that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States or elsewhere at less than fair value (LTFV); and secondly, if the Secretary's determination is affirmative, a determination by the International Trade Commission as to whether an industry in this country is being, or is likely to be,

injured, or is prevented from being established by reason of the importation of such merchandise at LTFV. Affirmative findings by both the Secretary and the Commission result in a finding of "dumping", which is published in the Federal Register by the Secretary.[2] Merchandise subject to the dumping finding, including entries of such merchandise as to which appraisement has been withheld pending resolution of the dumping question, is thereupon appraised and assessed with a special dumping duty in addition to any other duties imposed thereon by law. 19 U.S.C. §§ 160 *et seq.* The general procedures followed in an antidumping investigation are thoroughly discussed by Chief Judge Re in a landmark case, *SCM Corporation v. United States (Brother International Corporation, Party-in-Interest)*, 450 F.Supp. 1178, 80 Cust.Ct. 226, C.R.D. 78–2 (1978), and for present purposes need not be further pursued. The importer, consignee or authorized agent of the person paying such duties may then file a protest as prescribed by section 1514 and, upon its denial, may commence a civil action in this court, under 28 U.S.C. § 2632.

In short, it is only in the event that there are affirmative LTFV and injury determinations and dumping duties are actually assessed that plaintiff may contest the legality of the Secretary's determination to initiate the antidumping investigation challenged herein. Consequently, inasmuch as there has been no liquidation nor assessment of dumping duties but merely the Secretary's determination to initiate the antidumping proceeding, the filing of the so-called "protest" and the commencement of the present action were premature and anticipatory.

*Matsushita* explicitly held that the Customs Court lacked jurisdiction under the All Writs Act (28 U.S.C. § 1651) to grant injunctive and declaratory relief against antidumping proceedings wherein the Secretary had made an affirmative LTFV determina-

---

**2.** Obviously, these requisite affirmative determinations may not materialize in the instant antidumping proceedings. Since the investigation contested herein may never ultimately culminate in a finding of dumping, plaintiff's characterization of the Secretary's determination on June 8, 1978 as "final agency action" (brief at 18) is plainly erroneous.

tion, but no dumping duties had been levied.

In *J. C. Penney Company, Inc. v. United States Department of Treasury*, 319 F.Supp. 1023 (S.D.N.Y.1970), aff'd, 439 F.2d 63 (C.A.2 1971), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971), the plaintiff (an importer of television sets from Japan) sought declaratory and injunctive relief in the District Court preventing the Treasury Department from conducting an investigation into whether the television sets were being sold at LTFV, alleging that the methods employed by the Treasury Department in making its LTFV determination violated due process. Plaintiff sought relief in the District Court on the ground, *inter alia*, that the Customs Court lacked jurisdiction over the controversy since no protest could then be filed.

The Court of Appeals, in affirming the District Court's dismissal of the action for lack of subject matter jurisdiction, addressed itself to Penney's remedy in the Customs Court (439 F.2d at 68):

> * * * Thus the only remedy available to Penney is the obtaining of refunds of special dumping duties which may have been improperly assessed and paid. Though it may be true that the ordering of a hearing would be a more desirable form of relief from Penney's point of view than the obtaining of refunds, the mere fact that more desirable remedies are unavailable does not mean that existing remedies are inadequate. We conclude that there is, in fact, an adequate remedy available to Penney in the Customs Court. * * *

Again, in *Manuli Tape, Inc. v. Daniel Minchew*, Civil Action 77–1152 (D.D.C. 1977), plaintiffs sought a declaratory judgment in the District Court that the International Trade Commission (ITC) lacked authority to conduct a certain antidumping investigation and an injunction prohibiting the ITC from continuing its investigation. In an unpublished memorandum order dated July 26, 1977 denying plaintiffs' motion for preliminary injunctive relief and dismissing the action, the court declined to address the merits of the case on the ground that the issue fell within the exclusive jurisdiction of the Customs Court. The District Court then significantly commented respecting plaintiffs' remedy in the Customs Court and "the procedure contemplated by Congress":

> To be sure, plaintiffs are correct in arguing that the Customs Court would not entertain a motion to enjoin the Commission's investigation *at this time.* This in no way, however, means that the court cannot provide plaintiffs an adequate remedy. *Rather, plaintiffs must await the outcome of the Commission's investigation; after the Antidumping process has run its course and if adverse action is taken against plaintiffs, the Customs Court can entertain the issue they raise.* As the statutes and cases referred to above make clear, such is the procedure contemplated by Congress. [Emphasis added in part.]

In summary, plaintiff's situation is this: If a finding of dumping is ultimately made by the Secretary, and dumping duties are assessed on plaintiff's imports of methanol, plaintiff will then, in a suit for refund of such duties, have the opportunity in a single proceeding to challenge all orders and findings entering into the assessment, including the legality of the investigation presently contested.

In *Boe, supra*, 543 F.2d 151, 64 CCPA at 17–18, Chief Judge Markey pointed out that the exercise of jurisdiction by this court prior to the payment of all liquidated duties would foster piecemeal litigation. This consideration is especially apposite where a plaintiff is seeking judicial intervention into an antidumping proceeding at an interlocutory stage, as in the present case. Thus, if plaintiff is properly entitled to judicial review at the investigatory stage of an antidumping proceeding, plaintiff would logically have the right to contest each subsequent phase of the antidumping proceedings, as well as a right of action after an assessment of dumping duties, if such assessment should materialize. Obviously, the jurisdictional scheme applicable to this

court under 28 U.S.C. § 1582 never contemplated the possibility of such piecemeal challenges to an antidumping proceeding at interlocutory stages.

Plaintiff urges judicial intervention at the present investigatory stage of the antidumping proceedings on the ground that the Secretary's asserted lack òf authority to conduct the investigation cannot be raised at a later stage. In support of this contention, plaintiff cites *United States v. Elof Hansson, Inc.*, 296 F.2d 779, 48 CCPA 91, C.A.D. 771 (1960), *cert. denied*, 368 U.S. 899, 82 S.Ct. 179, 7 L.Ed.2d 95 (1961). There, the Court of Customs and Patent Appeals held that an alleged procedural irregularity in an antidumping investigation (failure to publish notice of investigation) "should have been raised by timely objection at the administrative level" and that such objection was "waived by participating in the antidumping investigation without making timely objection to the Secretary of the Treasury" (296 F.2d at 782, 48 CCPA at 95).

*Hansson* is plainly distinguishable from the present case. In *Hansson*, the Appellate Court found that "[a]t no time during the course of the entire investigation was any issue raised before the Secretary, either directly or through the Customs Bureau, of any procedural irregularities in the investigation * * *" (296 F.2d at 781, 48 CCPA at 94). Continuing, the court characterized Hansson's position as being " 'clearly an afterthought, brought forward at the last possible moment to undue the administrative proceedings without consideration of the merits and [which] can prevail only from technical compulsion irrespective of considerations of practical justice' " (296 F.2d at 781, 48 CCPA at 95). By contrast, in the present case, plaintiff has timely asserted its objections to the investigation in its "Protest/Notice of Intent to Contest" dated June 23, 1978.

Consequently, there can be no doubt that in the antidumping proceedings challenged herein plaintiff has timely raised its objections before the Secretary and other appropriate officials, and therefore has preserved

its right to have the Secretary's determination of June 8, 1978 reviewed *at the appropriate time.*

## VI.

Plaintiff also argues that since du Pont, an American manufacturer, had the right under 19 U.S.C. § 1516 to contest a negative determination by the Secretary respecting sales at LTFV, plaintiff is likewise entitled to "equally immediate review" (brief at 17). This position is erroneous.

■ A *negative* LTFV determination by the Secretary terminates the antidumping proceeding and, as a *final* administrative determination, such negative LTFV determination is contestable in an action brought by an American manufacturer under section 1516. On the other hand, if the Secretary makes an *affirmative* LTFV determination, such decision is merely *interlocutory* in the antidumping proceedings since, as previously mentioned, the question as to whether there is injury must still be investigated and determined by the International Trade Commission. The 1974 Trade Act did not give an importer the right to contest an affirmative LTFV determination, or any other decision of the Secretary at an interlocutory stage of an antidumping proceeding.

## VII.

Plaintiff further contends that under 28 U.S.C. § 1582 this suit is "an action relating to a decision under section 516 of the Tariff Act of 1930, as amended", and hence the payment of "all liquidated duties, charges or exactions" is not a condition precedent to invoking the court's jurisdiction. This contention is fundamentally at odds with the statute.

■ Section 516 (19 U.S.C. § 1516) provides for an action by an American manufacturer, producer or wholesaler [3] who wishes to contest a *negative* LTFV determination by the Secretary or his decision *not* to assess antidumping duties. Clearly, in

---

3. Plaintiff asserts that it is an "American wholesaler" within the purview of section 1516.

the present case, plaintiff is not challenging a negative LTFV determination or a decision of the Secretary not to assess antidumping duties. Therefore, this action, which contests merely the *initiation of an investigation*, is not "an action relating to a decision under section 516 of the Tariff Act of 1930, as amended" within the purview of section 1582.

## VIII.

Plaintiff submits several other arguments, which merit but brief discussion.

As authority for subject matter jurisdiction in this action and the relief sought herein, plaintiff heavily relies upon the Administrative Procedure Act, as amended (specifically 5 U.S.C. §§ 702, 703), the Declaratory Judgment Act, as amended (28 U.S.C. §§ 2201, 2202), and the All Writs Act, as amended (28 U.S.C. § 1651). Reliance upon the foregoing statutes in the instant action is misplaced.

We first consider the Administrative Procedure Act, as amended (APA).

At the outset, it should be mentioned that in a very recent decision, *Michelin Tire Corporation v. United States*, 469 F.Supp. 270, 82 Cust.Ct. ——, C.R.D. 79–6 (1979), Judge Watson held that an action contesting an assessment of countervailing duties was not before this court by virtue of the operation of the APA, or pursuant to general principles of judicial review of administrative actions, but rather as a result of the commencement of an independent civil action provided by Congress. In light of Judge Watson's holding and his scholarly and exhaustive opinion, it would be logical to conclude that the APA is inapplicable to an action in this court under the Antidumping Act. However, it is unnecessary to decide this precise issue in the instant case. Even assuming *arguendo* that the APA applies to actions in this court, the Supreme Court held that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action". *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980,

985, 51 L.Ed.2d 192 (1977). See also the District Court's opinion in *Penney, supra*, 319 F.Supp. at 1030.

Furthermore, plaintiff is not correct in its assertion that "Public Law 94–574 removed any impediment which may have previously impaired the power of this Court to grant the relief requested by plaintiff" (brief at 21). The purpose of the amendatory provision, insofar as pertinent here, was to amend 5 U.S.C. § 702 "so as to remove the defense of sovereign immunity as a bar to judicial review of Federal administrative action otherwise subject to judicial review", and 5 U.S.C. § 703, "to permit the plaintiff to name the United States, the agency or the appropriate officer as defendant * * [to] eliminate technical problems arising from plaintiff's failure to name the proper Government officer as defendant". H.R. Rep. No. 94–1656, 94th Cong., 2d Sess. 1 (1976), U.S.Code Cong. & Admin.News 1976, p. 6121. The House Report states, so far as pertinent (at pp. 9–10) U.S.Code Cong. & Admin.News 1976, at p. 6130:[4]

> Other methods found in the substantial and growing body of law governing availability, timing, and scope of judicial review provide a much more rational basis for controlling unnecessary judicial interference in administrative decisions than does the defense of sovereign immunity. Thus, a case is unreviewable if it involves actions "committed to agency discretion by law." Other defenses include (1) statutory preclusion; (2) lack of ripeness; (3) failure to exhaust administrative remedies; and (4) lack of standing. The availability of these defenses—all of which provide a sounder substantive basis to control court review on the merits than the confusing doctrine of sovereign immunity—indicates that the policy against indiscriminate judicial interference with Government action would not be abandoned by eliminating the defense of sovereign immunity.

The House Report further states (at p. 12) U.S.Code Cong. & Admin.News 1976, at p. 6132:

4. See S.Rep.No. 94–996, 94th Cong., 2d Sess. 11 (1976).

Law Other Than Sovereign Immunity Unchanged

S. 800 is not intended to affect or change defenses other than sovereign immunity. All other than the law of sovereign immunity remain unchanged. This intent is made clear by clause (1) of the third new sentence added to section 702:

Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground.

These grounds include, but are not limited to, the following: (1) extraordinary relief should not be granted because of the hardship to the defendant or to the public ("balancing the equities") or because the plaintiff has an adequate remedy at law; (2) action committed to agency discretion; (3) express or implied preclusion of judicial review; (4) standing; (5) ripeness; (6) failure to exhaust administrative remedies; and (7) an exclusive alternative remedy.

■ Hence, I find that the APA, as amended, does not affect or change defenses other than sovereign immunity where the court otherwise has jurisdiction; nor does the APA confer an additional grant of subject matter jurisdiction upon the federal courts. And as stated in *Michelin, supra*, "[j]urisdiction in this court must be premised on its own particular and explicit statutory authority" (82 Cust.Ct. at ——). Accordingly, 28 U.S.C. § 1582, in conjunction with 19 U.S.C. §§ 1514 and 1516 must be viewed as the controlling grant of jurisdiction in the Customs Court, and as respects jurisdiction, the APA is irrelevant.

■ We now turn to plaintiff's claim for relief under the Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202). It is well settled that this Act neither creates subject matter jurisdiction where none otherwise exists, nor does the Act expand the scope of existing jurisdiction in the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Schulke v. United States*, 544 F.2d 453 (C.A.10 1976); *Workman v. Mitchell*, 502 F.2d 1201 (C.A.9 1974); *Penney*, 439 F.2d at 68; *Jarrett v. Resor*, 426 F.2d 213 (C.A.9 1970); *Continental Bank and Trust Company v. Martin*, 112 U.S.App.D.C. 354, 303 F.2d 214 (1962). Stated otherwise, the Declaratory Judgment Act creates only a particular kind of remedy available in actions where a court already has jurisdiction to entertain a suit. Moreover, a declaratory judgment is equitable in nature, and has "not been considered within the purview of [the Customs] Court". *Matsushita*, 67 Cust.Ct. at 330. *Accord, Mitsubishi International Corporation v. United States*, 81 Cust.Ct. ——, C.R.D. 78–9 (1978). *Cf. Flintkote v. United States, supra*. Further, "[e]quity power can apply only to matters within a court's jurisdiction and cannot be exercised in disregard of the mandatory requirements of the jurisdictional statute". *Boe*, 543 F.2d at 157, 64 CCPA at 18, n. 9.

■ In precisely the same situation affecting the Court of Claims, the Supreme Court held in *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969), that the Declaratory Judgment Act does not apply to the Court of Claims, since "[t]his [remedy] is essentially equitable relief of a kind that the Court of Claims has held throughout its history, up to the time this present case was decided, that it does not have the power to grant". To paraphrase the Supreme Court in *King*, "[t]his remedy is essentially equitable relief of a kind that the United States Customs Court has held throughout its history, up to the time this present case was decided, that it does not have the power to grant"; and accordingly, in the absence of an express grant of jurisdiction from Congress, I decline to assume that the Customs Court has been given the authority to issue a declaratory judgment.

■ Similarly, the All Writs Act, 28 U.S.C. § 1651, also relied upon by plaintiff, does not give this court jurisdiction to grant plaintiff the requested relief, but may only be utilized in aid of *existing* jurisdiction, that is to say, where the jurisdictional prerequisites of 28 U.S.C. § 1582 are present.

Hence, this court has consistently declined to assume jurisdiction by virtue of the All Writs Act. See the *Dexter* and *Matsushita* cases, *supra.* Cf. *Flintkote v. United States, supra; Penney,* 439 F.2d at 68.

Finally, I have considered the recent decision in *Association of National Advertisers, Inc. v. Federal Trade Commission,* 460 F.Supp. 996 (D.D.C.1978), cited by plaintiff, in which a declaratory judgment and injunction were issued by the District Court disqualifying the Chairman of the Commission from further participation in a trade regulation rule-making proceeding on the ground of prejudice in order to prevent irrevocable tainting of all subsequent proceedings.

But the factual situation in the above-cited case is completely different from that in the present case. More to the point, however, the unique jurisdictional scheme applicable to the Customs Court precludes the judicial intervention and type of relief the District Court was able to afford plaintiffs in *National Advertisers.*

In sum, it is readily apparent that in the present case plaintiff, understandably, seeks to circumvent the statutorily prescribed prerequisites for contesting the Secretary's determination. Plaintiff's contention that it is contesting the Secretary's determination to initiate an investigation in its capacity as an American wholesaler under the provisions of 19 U.S.C. § 1516 is repugnant to the statute. Since plaintiff is

suing as an importer, the Secretary's determination is not ripe for judicial review under 28 U.S.C. § 1582(c) until plaintiff's entries of methanol have been liquidated with assessment of antidumping duties, protests have been filed and denied, and all liquidated duties, charges and exactions have been paid. Thus, under constraint of the facts and circumstances in this case, the court lacks subject matter jurisdiction *at this juncture.*[5] Therefore, we do not reach the merits of plaintiff's claim.

## IX.

I am painfully frustrated and disturbed by certain inabilities of this Article III Court to deal with fundamental questions of fairness affecting American manufacturers, importers and our trading partners, who are concerned with millions of transactions, billions of dollars and significant importance of the domestic and foreign interests affected. Plainly, instances arise where a vacuum may develop with potential harsh consequences—but not alluding to the present case, where I perceive no unfairness to plaintiff resulting from the jurisdictional limitations under which this court must function. I refer, of course, to the lack of equity jurisdiction in our court[6]—quite apart from this court's need in appropriate cases to exercise such judicial authority and power. See the report of the proceedings of the *Third Annual Judicial Conference of the United States Court of Customs and*

---

5. Although the issue was not raised in this case, I have noted that it was held by Judge Weinfeld and the Court of Appeals in *Penney* that assumption of jurisdiction by the District Court would contravene the Anti-Injunction Act, 26 U.S.C. § 7421, which prohibits a suit "for the purpose of restraining the assessment or collection of any tax". Section 7421 was also mentioned by Judge Foley in *Flintkote, supra.* While cited in connection with the Declaratory Judgment Act and the All Writs Act, plaintiff has called attention in a footnote to the Supreme Court's decision in *Federal Energy Administration v. Algonquin SNG, Inc.,* 426 U.S. 548, 96 S.Ct. 2295, 49 L.Ed.2d 49 (1976). In *Federal Energy,* the Supreme Court held that license fees assessed under the authority conferred on the President by the Trade Expansion Act of 1962, as amended by the Trade Act of 1974, rather than the Internal Revenue Code,

are not "taxes" within the scope of the Anti-Injunction Act. Thus, there is a question as to whether antidumping duties are "taxes" within the purview of the Anti-Injunction Act. In any event, inasmuch as defendants do not rely on section 7421, the applicability of that provision in the instant case need not be decided.

6. In *Flintkote Company v. Blumenthal, Secretary of Treasury, supra,* Judge Foley stated that "I find plaintiff's assertion that the Customs Court, which is now an article III court, is without any equitable jurisdiction hard to accept. * * * Yet, it is true that the Customs Court cannot act upon Flintkote's requested relief until jurisdiction in that court is perfected. See *Dexter v. United States,* 424 F.Supp. 1069 (Cust.Ct.1977)".

*Patent Appeals, May 10, 1976,* 72 F.R.D. 239, 372–378, 381–396, which strikingly illustrates the Customs Court's vital need in appropriate instances, to be statutorily clothed with equity jurisdiction.

Distilling from *Dexter, supra,* 424 F.Supp. at 1071, 78 Cust.Ct. at 181:

\* \* \* It would appear that if the relevant jurisdictional statute satisfies the rudimentary constitutional requirements plaintiff's real argument is with the terms of the legislation and the final resolution of such a problem is a matter within the special competence of Congress. Congress is the proper body to consider whether the existing limitations on the jurisdiction of the court are possibly permitting the existence of inequities, which, although they may not be unconstitutional, are nevertheless incompatible with our sense of fairness and the spirit of an impartial and equitable government of laws.

And compare the very recent and significant statement by Circuit Judge Friendly, writing for the unanimous Second Circuit in affirming the District Court's decision in *Flintkote:*

\* \* \* This case is *a fortiori* since the "more desirable remedies" sought by Flintkote are remedies which Congress advertently withheld. If American manufacturers are to have the added remedies desired by Flintkote, it must be Congress that gives them. [596 F.2d at 58].[7]

I wish to extend my sincere appreciation to counsel for their excellent memoranda, which greatly aided in the expeditious disposition of this case—as requested by counsel.

For the reasons stated herein, an order was entered on March 15, 1979 granting defendants' cross-motion to dismiss for lack of jurisdiction of the subject matter, but without prejudice to renewal by plaintiff if and when the jurisdictional prerequisites can be satisfied, and denying plaintiff's motion for summary judgment.

---

**7.** Interestingly and parenthetically, Judge Friendly also observed in *Flintkote:*

Mr. Justice Frankfurter once said "I do not use the term 'jurisdiction' because it is a verbal coat of too many colors." *United States v. L. A. Tucker Lines,* 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (dissenting

opinion). See also *Yonkers v. United States,* 320 U.S. 685, 695, 64 S.Ct. 327, 333, 88 L.Ed. 400 (1944) (dissenting opinion), " 'Jurisdiction' competes with 'right' as one of the most deceptive of legal pitfalls." [596 F.2d at 55, n. 6].